No. 21-1008

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

————————————

ANDERSON COUTINHO SILVA,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA and BRANDON SHAW,

Defendants-Appellees.

————————————

On Appeal from the U.S. District Court
for the District of Colorado,
No. 1:19-CV-02563-CMA-MEH, Hon. Christine M. Arguello

————————————

**APPELLANT'S OPENING BRIEF**

————————————

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW
  #26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

Elizabeth R. Cruikshank
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
202-662-9042
erc56@georgetown.edu

*Counsel for Plaintiff-Appellant*

Oral Argument Requested

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ..................................................................................... ii

STATEMENT OF RELATED CASES ...................................................................... v

INTRODUCTION ..................................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................................... 2

STATEMENT OF THE ISSUES ............................................................................... 2

STATEMENT OF THE CASE .................................................................................. 3

SUMMARY OF ARGUMENT .................................................................................. 6

STANDARD OF REVIEW ....................................................................................... 8

ARGUMENT ............................................................................................................. 9

    I.   Silva's Eighth Amendment Claim Is Not an Extension of *Bivens*. ........................ 9

    II.  Even If It Arises in a "New Context," Silva's Eighth Amendment Claim May Properly Be Brought Under *Bivens*. ................................................................. 15

        A.  The judiciary is well suited to consider the benefits and costs of permitting a damages action in this case. ........................................................................ 16

        B.  Congressional action strongly supports recognizing a *Bivens* claim here. ........ 18

CONCLUSION ........................................................................................................ 26

STATEMENT CONCERNING ORAL ARGUMENT ............................................. 27

CERTIFICATE OF COMPLIANCE ....................................................................... 28

CERTIFICATE OF SERVICE ................................................................................ 29

ATTACHMENT A:  District court order

ATTACHMENT B:  Magistrate report and recommendation

ATTACHMENT C:  Final judgment

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agostini v. Felton,*
521 U.S. 203 (1997) ..................................................................................22

*Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.,*
771 F.3d 697 (10th Cir. 2014) ................................................................... 9

*Ali v. Duboise,*
763 F. App'x 645 (10th Cir. 2019) ..........................................................14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................17

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
403 U.S. 388 (1971) ........................................................................ 1, 4, 10

*Carlson v. Green,*
446 U.S. 14 (1980) ...................................... 2, 6, 7, 9, 10, 11, 13, 16, 17, 19, 20

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ....................................................................................21

*Clark v. Argutto,*
221 F. App'x 819 (11th Cir. 2007) ...........................................................15

*Corr. Servs. Corp. v. Malesko,*
534 U.S. 61 (2001) ............................................................................ 17, 23

*Crawford-El v. Britton,*
523 U.S. 574 (1998) ..................................................................................25

*Farmer v. Brennan,*
511 U.S. 825 (1994) ...................................................................2, 7, 12, 13

*FDIC v. Meyer,*
510 U.S. 471 (1994) ..................................................................................16

*Green v. Corr. Corp. of Am.,*
401 F. App'x 371 (10th Cir. 2010) ...........................................................15

*Hernandez v. Mesa,*
137 S. Ct. 2003 (2017) ..............................................................................14

*Hernandez v. Mesa,*
140 S. Ct. 735 (2020) ................................................................................18

*Hill v. O'Brien,*
   387 F. App'x 396 (4th Cir. 2010) .................................................................15

*Hudson v. McMillian,*
   503 U.S. 1 (1992) ...................................................................... 12, 15, 17

*Hui v. Castaneda,*
   559 U.S. 799 (2010) ...............................................................................25

*Kelly v. Scott,*
   201 F.3d 448, 1999 WL 1101815 (10th Cir. 1999) ........................................15

*Leggett v. Clark,*
   39 F.3d 1192, 1994 WL 589445 (10th Cir. 1994) ................................... 14, 15

*Mammana v. Fed. Bureau of Prisons,*
   934 F.3d 368 (3d Cir. 2019) .....................................................................13

*McCarthy v. Madigan,*
   503 U.S. 140 (1992) ........................................................................ 11, 23

*Millbrook v. United States,*
   569 U.S. 50 (2013) .................................................................................19

*Minneci v. Pollard,*
   565 U.S. 118 (2012) ...............................................................................23

*Munz v. Michael,*
   28 F.3d 795 (8th Cir. 1994) .....................................................................15

*Reid v. United States,*
   825 F. App'x 442 (9th Cir. 2020) ..............................................................15

*Safe Streets All. v. Hickenlooper,*
   859 F.3d 865 (10th Cir. 2017) ...................................................................3

*Shelton v. Bledsoe,*
   522 F. App'x 109 (3d Cir. 2013) ...............................................................15

*Smith v. Plati,*
   258 F.3d 1167 (10th Cir. 2001) ..................................................................8

*Smith v. United States,*
   561 F.3d 1090 (10th Cir. 2009) ..................................................................5

*Thomas v. Haltom,*
   840 F.2d 18, 1988 WL 15502 (6th Cir. 1988) ..............................................15

*Trackwell v. United States,*
   472 F.3d 1242 (10th Cir. 2007) ..................................................................9

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017)............................7, 8, 9, 10, 12, 13, 16, 17, 18, 19, 21, 22, 23, 24

**Statutes**

28 U.S.C. § 1291 ...................................................................................................... 2

28 U.S.C. § 1331 ...................................................................................................... 2

28 U.S.C. § 1346(b) ................................................................................................ 19

28 U.S.C. § 1915A .................................................................................................. 17

28 U.S.C. § 2674 ..................................................................................................... 19

28 U.S.C. § 2679(b)(1) ........................................................................................... 25

28 U.S.C. § 2679(b)(2)(A) ...................................................................................... 25

28 U.S.C. § 2679(d)(1) ........................................................................................... 25

28 U.S.C. § 2680(h) ................................................................................................ 19

42 U.S.C. § 1997e(a)......................................................................................... 17, 25

**Regulations**

28 C.F.R. § 542.10 .................................................................................................. 23

28 C.F.R. § 552.20 .................................................................................................. 18

**Other Authorities**

H.R. Rep. No. 100-700 (1988) .............................................................................. 25

## STATEMENT OF RELATED CASES

Counsel are not aware of any prior or related appeals.

## INTRODUCTION

While Anderson Silva was restrained in his cell in federal prison, a corrections officer named Shaw entered the cell beyond the range of security cameras, in violation of prison protocols, and attacked Silva, slamming him to the floor and jumping on his back. Silva's back, leg, and hand were injured in the assault. When Silva reported the abuse through the prison grievance process and eventually filed this lawsuit, Shaw threatened to make Silva's life a "living hell" unless he withdrew his complaint.

Yet the district court concluded that Silva should have no remedy for this clear violation of his Eighth Amendment right to be free of excessive force. It held that Silva was not permitted to seek damages from the guard who attacked him under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), even though the Supreme Court has previously authorized multiple Eighth Amendment claims based on analogous misconduct by rank-and-file prison officials.

The district court's analysis was wrong at every step. Silva's claim entails a straightforward application of prior Supreme Court *Bivens* cases and does not arise in a "new *Bivens* context." But even if this case did require a modest extension of *Bivens* to a new scenario, none of the "special factors" weighing against an extension of *Bivens* applies here. In fact, Congress has already made the deliberate policy decision of imposing procedural limitations on prison-related *Bivens* claims without barring such claims altogether. By rejecting Silva's *Bivens* claim, the district court has undermined Congress's carefully calibrated regulatory scheme and the separation-of-powers

1

concerns that underlie *Bivens*. This Court should reverse the district court's unsupported ruling.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Anderson Silva appeals from an order of dismissal with prejudice entered December 29, 2020, by the U.S. District Court for the District of Colorado. App. 67-80; App. 81-82. The district court had subject-matter jurisdiction over his claims under 28 U.S.C. § 1331. In accordance with Federal Rule of Appellate Procedure 4(a), a timely notice of appeal was filed on January 13, 2021. App. 83. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in concluding that Silva's Eighth Amendment excessive force claim against a rank-and-file prison official would require extending *Bivens* to a new context despite the Supreme Court's recognition of analogous Eighth Amendment claims in *Carlson v. Green*, 446 U.S. 14 (1980), and *Farmer v. Brennan*, 511 U.S. 825 (1994).

2. Whether the district court erred in concluding that special factors counsel against recognizing a *Bivens* cause of action for Silva's Eighth Amendment claim even though he has no other adequate remedy and congressional enactments strongly support authorizing a *Bivens* claim in this context.

## STATEMENT OF THE CASE

This case involves an incarcerated plaintiff's attempts to hold accountable a federal prison guard who assaulted him while he was in restraints. The following facts are drawn from Silva's complaint and must be taken as true. *See Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

Silva is incarcerated in the federal supermax prison in Florence, Colorado (U.S.P. Florence). App. 15. In 2018, Silva was restrained in his cell when Shaw, a corrections officer, was completing cell rotations. App. 18. In violation of prison security protocol, Shaw entered Silva's cell entirely, past the view of security cameras. App. 18. Shaw assaulted Silva, slamming Silva on the floor, jumping on Silva's back, and applying painful pressure with his knee. App. 18; App. 22. Shaw then called for assistance, and several fellow corrections officers joined him in Silva's cell; the officers later claimed that Silva had assaulted Shaw, even though Silva was handcuffed throughout the attack. App. 18. Silva suffered injuries to his back, right leg, and left hand. App. 18. Though he requested medical attention, the medical staff at the prison never evaluated his injuries. App. 18. In the time since the attack, Silva has repeatedly experienced retaliation by staff at U.S.P. Florence, including Shaw, for filing grievances and this suit. App. 20; *see also* App. 13; App. 22; App. 47.

Proceeding pro se, Silva brought claims under the Eighth Amendment against the United States and Shaw, as relevant here. Silva sought monetary damages

pursuant to *Bivens*, 403 U.S. 388, and injunctive relief in the form of transfer out of U.S.P. Florence to avoid further retaliation and discipline for Shaw.  App. 20.

Defendants filed a motion to dismiss all claims in Silva's operative complaint, and Shaw filed a separate motion for partial summary judgment as to the claim against him in his individual capacity.  App. 48.  The magistrate judge recommended that the district court dismiss all claims and deny the motion for partial summary judgment as moot.  App. 49.  In relevant part, on Silva's *Bivens* claim against Shaw in his individual capacity, the magistrate recommended that the district court dismiss with prejudice for failure to state a claim.  App. 55-58.  Specifically, the magistrate concluded that Silva's Eighth Amendment claim required an extension of *Bivens*; that Silva had alternative remedies available in the form of the Bureau of Prison's (BOP's) administrative remedy program, the Federal Tort Claims Act (FTCA), and mandamus; and that "special factors" cautioned against a *Bivens* remedy in this case because damages claims would "interfe[re] with prison management and add to the Court's already heavy burden of prisoner litigation," while the enactment of the Prison Litigation Reform Act "suggests that Congress does not want to provide federal inmates with a damages remedy."  App. 56-58.[1]

---

[1] With respect to Silva's injunctive claim against both Shaw and the United States, the magistrate determined that Silva's argument that Shaw posed a real and ongoing threat to him was mere "speculation that a similar incident will occur" and recommended dismissal of the claim without prejudice.  App. 53-54.

Silva objected to the magistrate's report and recommendation. App. 62-66. While acknowledging that the Supreme Court has authorized a *Bivens* remedy in only three cases, Silva pointed to several federal court of appeals cases finding violations of the Eighth Amendment where guards used excessive force against incarcerated plaintiffs who were already restrained. App. 63-64 (citing cases). He also explained that the institutional grievance process is ineffective at checking prison guard abuse, as evidenced by the failure of the BOP to ever discipline Shaw despite the numerous grievances that have been filed against him. App. 63.

The district court adopted the magistrate's report and recommendation in full, reviewing de novo the magistrate's determinations that were objected to by a party— those pertaining to the *Bivens* claim—and for clear error the conclusions that were not objected to. App. 67-80.[2] As to the *Bivens* question, the district court agreed with the

---

[2] The district court at one point indicated that Silva had objected to the section of the report and recommendation "conclud[ing] that Plaintiff's Eighth Amendment excessive force claim against Defendant Shaw in his *official capacity* should be dismissed for lack of a *Bivens* remedy," but that he had not objected to the section determining "that the Court should not extend *Bivens* to cover Plaintiff's excessive force claim against Defendant Shaw in his *individual capacity*." App. 72-73 (emphasis added). This was a misstatement, as evidenced by the rest of the district court's opinion.

*Bivens* claims may be brought against defendants only in their individual capacity, *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009), and the district court elsewhere recognized that Silva brought a *Bivens* claim against Shaw solely in his individual capacity, App. 68. When issuing its conclusion regarding the claims reviewed for clear error, the district court stated that "Plaintiff's claims for injunctive relief against the United States and Defendant Shaw in his official capacity are dismissed for lack of standing" and said nothing about the *Bivens* claim. App. 73. And the district court proceeded to evaluate de novo whether Silva's Eighth Amendment claim constituted an extension of *Bivens* and, finding that it was, whether

magistrate that Silva's claim "presents a new *Bivens* context" because it involves an Eighth Amendment excessive force claim rather than the Eighth Amendment deliberate indifference claim authorized in *Carlson*, 446 U.S. 14.  App. 76-77.  This "meaningful difference," the district court explained, is sufficient to require an extension of *Bivens*.  The district court "further agree[d]" with the magistrate's conclusion that "special factors in this case counsel against extending a *Bivens* remedy."  App. 78.  Specifically, the district court concluded that "alternative remedies exist" for Silva in the form of the BOP administrative grievance program and the FTCA.  App. 78-79.  Accordingly, the district court dismissed with prejudice Silva's Eighth Amendment excessive force claim against Shaw in his individual capacity for lack of a *Bivens* remedy and denied Shaw's partial motion for summary judgment as moot.  App. 79-80.  The district court entered a final judgment dismissing the operative complaint in full.  App. 81-82.  Silva timely appealed.  App. 83.

## SUMMARY OF ARGUMENT

Silva should be permitted to pursue a *Bivens* action against Shaw based on Shaw's violation of Silva's Eighth Amendment right to be free of excessive force.

---

to authorize such an extension.  App. 74-79.  Both the entirety of the opinion and background legal principles therefore make clear that all parties and the court understood that Silva's objection was to the magistrate's conclusion that he lacked a *Bivens* remedy against Shaw in his individual capacity, the opposite of the district court's statement.

**1.** Silva's Eighth Amendment claim does not require an extension of *Bivens* to a new context. A case arises in a "new *Bivens* context" where it "is different in a meaningful way from previous *Bivens* cases." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017). Factors courts should consider in evaluating whether a case presents such a "new *Bivens* context" include the constitutional right at issue and the extent of judicial guidance available governing the scope of that right, the rank of the officers involved, and the risk of judicial intrusion into the functioning of other branches. *Id.* at 1860.

The Supreme Court first permitted a *Bivens* claim against rank-and-file federal prison officials for deliberate indifference under the Eighth Amendment in *Carlson*, 446 U.S. 14. It reasoned that such officials "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Id.* at 19. More than a decade later, in *Farmer v. Brennan*, the Court applied *Carlson* to an Eighth Amendment failure-to-protect claim. 511 U.S. 825, 830 (1994). These cases establish the availability of a *Bivens* claim against line-level prison officials based on a range of Eighth Amendment violations.

Not one of the factors indicating a "new *Bivens* context" applies here to differentiate this case from *Carlson* or *Farmer*. *See Abbasi*, 137 S. Ct. at 1860. If anything, this claim involves a lesser incursion into prison management, because it challenges only a single instance of excessive force by one rank-and-file prison official, where *Carlson* required an inquiry into the failed medical care for an incarcerated patient from a variety of prison officials, including the alleged involvement of the

BOP director; similarly, *Farmer*'s claims extended to the prison warden. This Court has not hesitated to authorize *Bivens* actions for similar Eighth Amendment excessive force claims, and many of its sister circuits have followed suit. Accordingly, this Court should hold that Silva's Eighth Amendment claim does not arise in a new context from previously recognized *Bivens* actions and should permit it to proceed.

**2.** Even if Silva's claim did require a modest extension of *Bivens*, none of the *Bivens* "special factors" counsels against such an extension; rather, they favor an authorization of a damages remedy in this case. Here, the judiciary is "well suited … to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58. The benefits of authorizing a damages action against line-level prison officials who assault the individuals they are meant to guard include "redress[ing] past harm" and "deter[ring] future violations." *Id.* at 1858. And none of the costs that typically have an "impact on governmental operation systemwide" apply here. *Id.*

Moreover, Congress has not created an adequate "alternative … process for protecting the [injured party's] interest." *Id.* (second alteration in original). Instead, it has enacted legislation showing both awareness and approval of *Bivens* remedies for individual instances of prison abuse.

## STANDARD OF REVIEW

This Court reviews a district court's grant of a motion to dismiss de novo. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The Court must "accept all the

well-pleaded allegations of the complaint as true" and "construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014). Because Silva proceeded pro se before the district court, this Court must review Silva's "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007).

## ARGUMENT

The district court erred at each step of its *Bivens* analysis in dismissing Silva's Eighth Amendment claim. As an initial matter, Silva's Eighth Amendment claim does not constitute an extension of *Bivens*, and the district court's analysis should have ended there. Even if Silva's claim did require a modest extension of *Bivens*, however, none of the *Bivens* "special factors" counsels against such an extension; in fact, they favor an authorization of a *Bivens* claim in this context.

## I.   Silva's Eighth Amendment Claim Is Not an Extension of *Bivens*.

In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers who violate an individual's constitutional rights. *Bivens* established that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court." *Carlson*, 446 U.S. at 18. A *Bivens* claim "is brought against the individual official for his or her own acts, not the acts of others." *Abbasi*, 137 S. Ct. at 1860.

In the Supreme Court's recent explication of *Bivens* in *Ziglar v. Abbasi*, the Court

clarified how to determine the availability of a *Bivens* remedy for a given constitutional

claim.  At the outset, the court should evaluate whether the case arises in a "new

*Bivens* context," such that it "is different in a meaningful way from previous *Bivens*

cases."  *Id.* at 1859.  If the claim does arise in a "new context," the court should

inquire into whether there are any "special factors counselling hesitation" before

extending a damages remedy into the new context.  *Id.* at 1857.

> A case may arise in a "new context"
>
> because of the rank of the officers involved; the constitutional right at
> issue; the generality or specificity of the official action; the extent of
> judicial guidance as to how an officer should respond to the problem or
> emergency to be confronted; the statutory or other legal mandate under
> which the officer was operating; the risk of disruptive intrusion by the
> Judiciary into the functioning of other branches; or the presence of
> potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860; *see also id.* at 1864.  Because Silva's Eighth Amendment claim does not

arise in a "new context" and is therefore not an extension of *Bivens*, no recourse to the

*Bivens* "special factors" is necessary to conclude that a damages remedy is available.

After *Bivens* authorized a damages action against federal narcotics agents who

violated the Fourth Amendment by executing a search and an arrest without a warrant

and using excessive force in making the arrest, 403 U.S. at 389, 397, the Supreme

Court subsequently permitted a damages remedy against rank-and-file federal prison

officials for violating the Eighth Amendment in *Carlson v. Green*.  *See* 446 U.S. at 18-23.

In *Carlson*, the mother of a deceased asthma patient who had been incarcerated in

federal prison sued prison officials for deliberate indifference to his serious medical needs after they failed to give him competent medical attention, administered contraindicated drugs and a non-working respirator that worsened his condition, and delayed his transfer to an outside hospital.  *Id.* at 16 n.1.  The Court concluded that a damages remedy was appropriate for the alleged Eighth Amendment violation because rank-and-file prison officials "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate."  *Id.* at 19.  Though "requiring [prison officials] to defend [a damages] suit might inhibit their efforts to perform their official duties" to some extent, the Court explained that qualified immunity would "provide[] adequate protection."  *Id.*  Meanwhile, a damages remedy against individual prison officials for Eighth Amendment violations would "serve[] a deterrent purpose" by imposing "personal financial liability."  *Id.* at 21.

A decade later, in *McCarthy v. Madigan*, the Court reaffirmed *Carlson*'s holding, reiterating that "prison officials" are subject to *Bivens* liability because they "do not enjoy an independent status in our constitutional scheme, nor are they likely to be unduly inhibited in the performance of their duties by the assertion of a *Bivens* claim." 503 U.S. 140, 151 (1992), *superseded by statute on other grounds as recognized by Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006).  Two years after that, in *Farmer v. Brennan*, the Court applied *Carlson* to another Eighth Amendment deliberate indifference claim, this time based on prison officials' failure to protect the plaintiff from a substantial risk of

violence from another prisoner. 511 U.S. at 830. The Supreme Court acknowledged the viability of the plaintiff's claim under *Bivens* without analysis and proceeded to clarify the standard for Eighth Amendment deliberate indifference claims in a *Bivens* suit. *Id.* at 832-40. Together these cases indicate the continuing viability of *Bivens* suits against line-level prison officials based on a range of Eighth Amendment violations.

    *Carlson* resolves this appeal, as it shows that not a single one of the *Abbasi* factors for identifying a "new *Bivens* context" is met, *Abbasi*, 137 S. Ct. at 1860, as either a legal or factual matter. The Eighth Amendment's prohibition on cruel and unusual punishments is the source of both the deliberate indifference claim at issue in *Carlson* and the excessive force claim here, just as it was the source of the failure-to-protect claim authorized in *Farmer*. Judicial precedent provides no "less meaningful" of a "guide for official conduct" in the excessive force context than in the deliberate indifference context. *Id.* In fact, it has long been well established that prison officials use excessive force when they "maliciously and sadistically … cause harm" rather than applying force "in a good-faith effort to maintain or restore discipline," *see Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); this is a substantially *more* "meaningful guide for official conduct" than existed when *Carlson* was decided, since the standard for a deliberate indifference claim was not clarified until 14 years later in *Farmer*.

    The facts of *Carlson* and this case also show that there is no "meaningful" distinction between them, as the Supreme Court defined that term in *Abbasi*, 137 S.

Ct. at 1860.  The rank of the officers involved is no higher here than it was in *Carlson* or *Farmer*.  In fact, Silva seeks to hold accountable for his harm only the sole rank-and-file prison official who was personally responsible for his injury: the guard who assaulted him when he was in restraints.  The plaintiff in *Carlson*, by contrast, sought damages from a range of officials at different levels of the prison bureaucracy, all the way up to the federal BOP director, *Carlson*, 446 U.S. at 14; the plaintiff in *Farmer* similarly sued both rank-and-file prison officials and the prison warden, *Farmer*, 511 U.S. at 825.  The official action at issue in both cases is equally "specific":  Both suits involve a claim of direct harm by a prison official to an individual in his care rather than a challenge to a general policy that created certain conditions of confinement.

Moreover, there is no greater risk in this case of intrusion by the judiciary into the functioning of other branches.  As the Supreme Court explained in *Carlson*, prison officials lack the kind of "independent status in our constitutional scheme" that would render inappropriate "judicially created remedies against them."  446 U.S. at 19.  This case, like *Carlson*, does not require the Court to "balanc[e] the rights of incarcerated citizens with the administrative judgment of prison officials," *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 370 (3d Cir. 2019), because no "administrative judgment" was exercised by a prison guard who assaulted a person in restraints.  If anything, this claim involves a lesser incursion into prison management than *Carlson*, because it challenges only a single instance of excessive force by one rank-and-file prison official

rather than an inquiry into the overall failed medical care for an incarcerated patient, including the alleged involvement of the BOP director.

Further supporting the notion that Eighth Amendment excessive force claims against federal prison officials do not arise in a "new *Bivens* context," this Court has for decades allowed such claims without casting any doubt at the threshold about the availability of the claim. *Cf. Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (noting that "the *Bivens* question" is "antecedent" to "other questions presented"). In *Ali v. Duboise*, 763 F. App'x 645 (10th Cir. 2019), for instance, an incarcerated plaintiff brought a *Bivens* claim alleging that a federal prison guard had thrown him onto a desk and physically assaulted him while he was not resisting. *Id.* at 648. The district court dismissed the claim on qualified immunity grounds, concluding that the plaintiff had failed to identify a case that would have put the guard on notice that his conduct would violate the Eighth Amendment's prohibition on the use of excessive force. *Id.* at 649, 651. This Court reversed, holding that "clearly established law made it clear [the guard's] conduct was unlawful." *Id.* at 651 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 35-37 (2010)).

Similarly, in *Leggett v. Clark*, 39 F.3d 1192, 1994 WL 589445 (10th Cir. 1994), an incarcerated plaintiff alleged that guards had opened his cell door while he was unrestrained so the officers could justify attacking him. *Id.* at *1. The plaintiff filed a *Bivens* suit, raising "an Eighth Amendment claim of excessive force." *Id.* at *2. The district court granted summary judgment for the individual officers on the ground

that the officers' conduct was a "legitimate security response" and that the plaintiff failed to show that the officers acted "maliciously and sadistically." *Id.* This Court reversed the grant of summary judgment because the district court failed to consider the relevant factors for determining whether prison officials had acted maliciously and sadistically under *Hudson*, 503 U.S. at 6-7. *Id.* at *3-4. In neither case—including *Duboise*, which followed *Abbasi*—did this Court question the availability of a *Bivens* remedy as a threshold matter. *See also, e.g.*, *Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 375-76 (10th Cir. 2010) (applying Eighth Amendment excessive force standard in *Bivens* action against prison guard in his individual capacity); *Kelly v. Scott*, 201 F.3d 448, 1999 WL 1101815, at *3 (10th Cir. 1999) (same).

This is consistent with the approach of several other courts of appeals, which have rightly permitted *Bivens* suits for Eighth Amendment excessive force claims. *Shelton v. Bledsoe*, 522 F. App'x 109, 113 (3d Cir. 2013); *Hill v. O'Brien*, 387 F. App'x 396, 399 (4th Cir. 2010); *Thomas v. Haltom*, 840 F.2d 18, 1988 WL 15502, at *1 (6th Cir. 1988); *Munz v. Michael*, 28 F.3d 795, 798-99 (8th Cir. 1994); *Reid v. United States*, 825 F. App'x 442, 444-45 (9th Cir. 2020); *Clark v. Argutto*, 221 F. App'x 819, 826 (11th Cir. 2007).

## II.   Even If It Arises in a "New Context," Silva's Eighth Amendment Claim May Properly Be Brought Under *Bivens.*

If the Court concludes that a modest extension of *Carlson* is required to authorize a damages remedy here, it should find that there are no "special factors

counselling hesitation" before authorizing a damages remedy in this case. *Abbasi*, 137 S. Ct. at 1857. That is because the judiciary is fully capable of weighing the costs and benefits of allowing a damages action under these circumstances and because Congress has created no alternative remedial scheme for protecting Silva's rights; in fact, its relevant enactments signal both explicit and tacit approval of a *Bivens* remedy for incarcerated plaintiffs subjected to the kind of abuse Silva suffered. *See id.* at 1857-58. This is thus precisely the kind of case where *Bivens* retains "continued force." *Id.* at 1856.

### A.     The judiciary is well suited to consider the benefits and costs of permitting a damages action in this case.

One prong of the Supreme Court's "special factors" analysis looks to whether the judiciary is "well suited … to consider and weigh the costs and benefits of allowing a damages action to proceed," *id.* at 1857-58, which it plainly is in this case. The benefits of authorizing a damages action against line-level prison officials who assault the individuals they are meant to guard are well established. As the Supreme Court has consistently affirmed, in addition to "redress[ing] past harm," the availability of money damages against individual federal actors who violate the Constitution furthers *Bivens*' purpose of "deter[ring] future violations." *Id.* at 1858; *see also Carlson*, 446 U.S. at 21 ("[T]he *Bivens* remedy, in addition to compensating victims, serves a deterrent purpose."); *FDIC v. Meyer*, 510 U.S. 471, 485 (1994). In fact, the Supreme Court has recognized that this category of case, involving an "individual

16

instance[] of … law enforcement overreach," is by its "very nature" "difficult to address except by way of [a] damages action[] after the fact." *Abbasi*, 137 S. Ct. at 1862. If deterrence is important in the context of deliberate indifference to medical needs, surely it is even more so in the context of the "malicious[] and sadistic[]" use of excessive force in this case. *Hudson*, 503 U.S. at 6-7.

Meanwhile, none of the costs that typically constitute "special factors counselling hesitation" applies here. Silva is suing the prison guard who assaulted him based on a single, though substantial, instance of excessive force in violation of prison security protocols. It is a claim "against the individual official for his … own acts, not the acts of others." *Abbasi*, 137 S. Ct. at 1860. Silva's claim will thus have almost no "impact on governmental operations systemwide," *id.* at 1858, analogous to the claim in *Carlson*, where the Supreme Court explained that any impact on the defendants' "official duties" would be "adequately protect[ed]" against by qualified immunity, 446 U.S. at 19. Nor will it expose prison guards to a flood of frivolous lawsuits, because those are already addressed by screening under 28 U.S.C. § 1915A; exhaustion requirements under the Prison Reform Litigation Act (PLRA), 42 U.S.C. § 1997e(a); pleading requirements, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); and qualified immunity.

Moreover, evaluation of Silva's claim does not "call into question the formulation and implementation of a general policy," *Abbasi*, 137 S. Ct. at 1860; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (noting that a *Bivens* remedy is

not "a proper vehicle for altering an entity's policy"). If anything, Silva seeks to

uphold prison policy by ensuring that it is enforced against guards who violate it. *See*

28 C.F.R. § 552.20 (providing that prison staff may use "only that amount of force

necessary" to ensure prison safety and security and "only as a last alternative after all

other reasonable efforts to resolve a situation have failed"). Accordingly, his suit does

not require "inquiry and discovery into" any "discussions and deliberations that led to

the policies and governmental acts being challenged," nor will discovery and the

litigation process "border upon or directly implicate" any "discussion and

deliberations that led to the formulation of" government policy. *Abbasi*, 137 S. Ct. at

1860-61. Finally, this case arises in the context of a regular federal prison and

implicates only "standard 'law enforcement operations'" rather than national security

or other interests that might be entitled to heightened protection. *Id.* at 1861; *see also*

*Hernandez v. Mesa*, 140 S. Ct. 735, 749 (2020) (describing "[f]oreign policy and national

security decisions" as outside the purview of the judiciary).

### B. Congressional action strongly supports recognizing a *Bivens* claim here.

The other focus of the "special factors" analysis looks to whether Congress has

created an adequate "alternative … process for protecting the [injured party's]

interest." *Id.* at 1858 (second alteration in original). In this context it has not. Absent

a damages remedy, Silva will not have adequate relief for his harm: "[I]t is damages or

nothing." *Id.* at 1862. In fact, relevant congressional legislative actions show both awareness and approval of *Bivens* remedies for individual instances of prison abuse.

**1.** Contrary to the district court's conclusion, the FTCA is not an adequate alternative remedial scheme, as the Supreme Court has explicitly held. The FTCA authorizes damages suits against the United States for injuries caused by the wrongful acts of federal employees. 28 U.S.C. § 1346(b). Subject to exceptions, the United States is "liable" "to the same extent as a private individual." 28 U.S.C. § 2674. In 1974, Congress amended the FTCA to authorize assault and battery claims when committed by "law enforcement officers." 28 U.S.C. § 2680(h); *see Millbrook v. United States*, 569 U.S. 50, 56-57 (2013) (permitting FTCA claim based on assault by BOP officials).

But as the Supreme Court has held, it is "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action" in the context of "intentional torts committed by federal law enforcement officers." *Carlson*, 446 U.S. at 19-20. Pointing to the congressional comments that accompanied the 1974 amendment, the Court explained that Congress viewed FTCA relief "as a *counterpart* to the *Bivens* case and its progen[y]," making "the Government independently liable in damages for the same type of conduct that is alleged to have occurred in *Bivens*." *Id.* at 20 (quoting S. Rep. No. 93-588, p. 3 (1973)). As such, individuals who were subjected to such misconduct would "have a cause of action against the individual

Federal agents *and* the Federal Government" under the two remedial schemes. *Id.* (quoting S. Rep. No. 93-588, p. 3).

The Court identified additional support for the notion that the FTCA was not intended to displace a *Bivens* remedy for the same harm. It noted that "Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy," which it had not done in the context of law enforcement misconduct. *Id.* It explained that a *Bivens* remedy, which "is recoverable against individuals, … is a more effective deterrent than the FTCA remedy against the United States." *Id.* at 21. It noted that the possibility in a *Bivens* suit of punitive damages—which are statutorily prohibited under the FTCA—might be "especially appropriate to redress the violation by a Government official of a citizen's constitutional rights." *Id.* at 21-22. And it recognized the desirability of having "the liability of federal officials for violations of citizens' constitutional rights … be governed by uniform rules," contrasting this with the FTCA, which provides for a claim "only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct." *Id.* at 23.

In relying on the FTCA as an "alternative remedy" precluding an extension of *Bivens*, the district court did not even acknowledge, much less attempt to distinguish, the contrary binding Supreme Court precedent of *Carlson*. Instead, it merely cited two out-of-circuit decisions, one a district court opinion and one a magistrate report and recommendation, questioning the continued validity of the Supreme Court's FTCA-related holding in *Carlson* in light of *Abbasi*. App. 79 (citing *Turkmen v. Ashcroft*, No.

02-CV-2307 (DLI) (SMG), 2018 WL 4026734, at *10-11 (E.D.N.Y. Aug. 13, 2018), and *Morgan v. Shivers*, No. 14-CV-7921 (GHW), 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018)).

But nothing in *Abbasi* undermined the validity of *Carlson*. In fact, the Supreme Court made clear that its intent was not to "cast doubt on the continued force, or even the necessity," of *Bivens* and its progeny, adding that the "settled law of *Bivens* in th[e] common and recurrent sphere of law enforcement, and the undoubted reliance upon it …, are powerful reasons to retain it." *Abbasi*, 137 S. Ct. at 1856-57. And in the section of *Abbasi* evaluating whether *Carlson* should be extended to authorize the plaintiffs' Fifth Amendment conditions-of-confinement claim against a warden, the Court did not even mention the FTCA as a form of potential alternative relief counseling hesitation. Instead, it cited only the possibility that the plaintiffs could seek habeas relief or an injunction requiring the warden to bring his prison into compliance, *id.* at 1865—relief that would in no way address the harm in this case, an individual instance of excessive force against a restrained prisoner.[3] As the Court explained, the latter kinds of instances of "law enforcement overreach" are by "nature" "difficult to address except by way of damages after the fact." *Id.* at 1862.

---

[3] Injunctive relief would do nothing to remedy the physical harm Silva suffered in the past from an assault that already occurred. Moreover, injunctions are rarely granted in excessive force cases because of the difficulty of proving that future "injury or threat of injury" is "both real and immediate," *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983), as this case illustrates, App. 53-54.

The district court erred in failing to apply a precedent of the Supreme Court with "direct application in [the] case" that "directly controls" based on its faulty reasoning that the decision "appear[ed] to rest on reasons rejected in some other … decision[]." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (rejecting the notion that lower courts should conclude that the Supreme Court's "more recent cases have, by implication, overruled an earlier precedent" and holding that they should instead continue to "follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions" (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989))).

**2.**   The district court's other proffered "alternative relief"—the BOP administrative grievance process—is similarly inadequate, both legally and factually. The grievance process is not the kind of "alternative remedial structure" the Supreme Court has described when discussing the kinds of available relief that might preclude an extension of *Bivens*.  Because "separation-of-powers principles … should be central to" the *Bivens* analysis, the Court has instructed lower courts to consider whether "*Congress* has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Abbasi*, 137 S. Ct. at 1857-58 (emphasis added) (alterations in original) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)); *see also id.* at 1857 (explaining that separation-of-powers principles are central to the analysis of whether "Congress or the courts"

22

should decide "whether to provide for a damages remedy"). But the Administrative Remedy Program is a regulatory creation of the BOP. *See* 28 C.F.R. § 542.10. It was established under the BOP's broad statutory mandate "to administer the federal prison system." *See McCarthy*, 503 U.S. at 149. It offers no indication that Congress sought to displace a *Bivens* remedy with any administrative regime, because "[h]ere Congress has enacted nothing." *See id.* at 151-52 (noting that the "grievance procedure was neither enacted nor mandated by Congress").

Moreover, as the Supreme Court has held, the BOP grievance process "cannot be considered to be equally effective" to a *Bivens* claim. *Id.* The grievance process allows "allegedly unconstitutional actions and policies [to] be brought to the attention of the BOP and prevented from recurring" and, ultimately, injunctive relief to be sought to "prevent[] entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74. In situations like this one, involving individual instances of prison guard abuse that have already occurred, that process does nothing to redress the physical injury inflicted. And it creates no incentive for the guard to comport his conduct with the Eighth Amendment going forward. *See Abbasi*, 137 S. Ct. at 1858 (a *Bivens* remedy exists to "redress past harm and deter future violations"); *Minneci v. Pollard*, 565 U.S. 118, 130 (2012) (to provide "adequate" relief, a remedy must "provide roughly similar incentives for potential defendants to comply with the Eighth Amendment").

The administrative grievance process is also inadequate as a factual matter in this case because it is not an "available" form of relief to Silva. *See Abbasi*, 137 S. Ct.

23

at 1863.  As Silva wrote in his objections to the magistrate's report and

recommendation, "in the numerous grievances against [Shaw], not once has the

B.O.P. discipline[d]" him, App. 63, demonstrating that it has been ineffective at

deterring Shaw's misconduct.  Moreover, Silva has repeatedly explained that his use of

the grievance process and his filing of this lawsuit have resulted in retaliation from

Shaw and other members of the prison staff.  *See, e.g.*, App. 13 (denial of grievance

indicating that a staff member shouted at Silva and maced him for reporting his

assault); App. 23 (stating that Shaw entered Silva's cell and threatened him to drop his

complaint or Shaw would make Silva's "life a living hell"); App. 47 (reporting that

prison guards were preventing Silva from calling his family in retaliation).  Where, as

here, a prison official abuses the grievance process by retaliating against an individual

who makes appropriate use of it, that official cannot escape *Bivens* liability by pointing

to the same ineffective process.

**3.**  Two congressional enactments since *Carlson* support a modest extension of

*Bivens* to this case.

First is the Westfall Act of 1988, in which Congress expressly determined the

extent to which federal employees should be personally liable for damages.  The

Westfall Act generally amended the FTCA to make it the exclusive remedy for most

claims against government employees arising out of their official conduct.  It

precluded most damages claims against federal employees for "negligent or wrongful

act[s] or omission[s] … while acting within the scope of [their] office or

employment," providing that the United States would be substituted as a party in such actions and the claim would be converted to an FTCA action. 28 U.S.C. §§ 2679(b)(1), (d)(1). But Congress explicitly exempted *Bivens* claims from this provision, denying its immunity to federal officials for any "civil action … brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A); *see Hui v. Castaneda*, 559 U.S. 799, 807 (2010) (explaining that the Westfall Act made an "explicit exception for *Bivens* claims"). "[V]ictims" of such constitutional injuries continue to be able to "seek personal redress from Federal employees." H.R. Rep. No. 100-700, at *6 (1988). In striking this balance between liability for constitutional violations and immunity for general tort liability, Congress signaled its approval of the continued viability of *Bivens* claims.

The second relevant congressional enactment is the Prison Litigation Reform Act of 1996, in which Congress turned its attention to procedures surrounding lawsuits brought by federal and state prisoners. In the PLRA, Congress addressed concerns that incarcerated plaintiffs were "filing claims that are unlikely to succeed" by "fashion[ing] special rules" to deter frivolous lawsuits. *Crawford-El v. Britton*, 523 U.S. 574, 596 (1998). To that end, the PLRA imposed exhaustion requirements, judicial-screening procedures, and other limits on claims brought "under section 1983 … or any other Federal law," namely *Bivens*. 42 U.S.C. § 1997e(a); *see Crawford-El*, 523 U.S. at 596 (listing PLRA provisions). The deliberate legislative determination to impose procedural requirements on prison civil rights *Bivens* claims demonstrates that

25

Congress sought not to eliminate *Bivens* suits altogether but rather to regulate them, a balance the courts should respect.

## CONCLUSION

For the foregoing reasons, the district court decision should be reversed and the case should be remanded.

August 30, 2021                                    Respectfully submitted,

*/s/ Elizabeth R. Cruikshank*
Elizabeth R. Cruikshank
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY & PROTECTION
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
202-662-9042
erc56@georgetown.edu

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW
  #26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

## STATEMENT CONCERNING ORAL ARGUMENT

Because of the complexity of the legal issues involved in this appeal, Plaintiff-Appellant believes that oral argument may be helpful to the Court.  Oral argument is also warranted here given the significant implications of allowing the district court's decision to stand and foreclosing constitutional relief for incarcerated individuals who have been subjected to violence and abuse by prison guards.

/s/    *Elizabeth R. Cruikshank*
Elizabeth R. Cruikshank

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume, typeface, and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure and Rule 32 of the 10th Circuit Rules.  This brief contains 6,641 words, excluding the parts of the document exempted by Fed. R. App. 32(f), as calculated in Version 15.26 of Microsoft Word for Mac 2016.  It was prepared in 14-point font using Garamond, a proportionally spaced typeface.

/s/    *Elizabeth R. Cruikshank*
Elizabeth R. Cruikshank

**CERTIFICATE OF SERVICE**

I certify that on August 30, 2021, I electronically transmitted the foregoing

brief to the Clerk of the Court using the appellate CM/ECF System, causing it to be

served on counsel of record, who are all registered CM/ECF users.

/s/     *Elizabeth R. Cruikshank*
Elizabeth R. Cruikshank

# ATTACHMENT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 19-cv-02563-CMA-MEH

ANDERSON COUTINHO SILVA,

     Plaintiff,

v.

UNITED STATES OF AMERICA, and
BRANDON SHAW,

     Defendants.

---

**ORDER ADOPTING RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

---

     This matter is before the Court on the September 10, 2020 Recommendation of United States Magistrate Judge (Doc. # 96), wherein Magistrate Judge Michael E. Hegarty recommends that the United States of America and Brandon Shaw's (collectively, "Defendants") Motion to Dismiss (Doc. # 68) should be granted and, therefore, Defendant Shaw's Motion for Partial Summary Judgment (Doc. # 70) should be denied as moot. Plaintiff, proceeding *pro se*, timely objected to the Recommendation. For the following reasons, the Court adopts the Recommendation.

## I.    <u>BACKGROUND</u>

     Judge Hegarty's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28

U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address Plaintiff's objection to the Recommendation.[1]

Plaintiff is a federal inmate at the United States Penitentiary in Florence, Colorado ("USP Florence"). Plaintiff alleges that Defendant Shaw entered his prison cell as Shaw was completing cell rotations. (Doc. # 21 at 5.) Shaw assaulted Plaintiff out of the view of any cameras while completely inside Plaintiff's cell. Plaintiff "was in restraints" at the time of the assault. Shaw slammed Plaintiff "on the floor in the show[e]r" and jumped on Plaintiff's back using his knee. Shaw requested assistance, and C.O. J. Welch, D. Keehan, and J. Bonetto arrived in response. Plaintiff suffered injuries to his back, right leg, and left hand. Shaw's coworkers attempted to conceal the assault by claiming Plaintiff tried to assault staff while he was in handcuffs. (*Id.*)

Plaintiff initiated this case by filing his original, *pro se* complaint on September 9, 2019. (Doc. # 1.) The operative complaint in this case was filed on December 2, 2019 ("Complaint"). (Doc. # 21.) Liberally construed, Plaintiff asserts the following claims in his Complaint: (1) an Eighth Amendment excessive force claim against Defendant Shaw in his individual capacity under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); (2) a claim for prospective injunctive relief against Defendant Shaw in his official capacity based on alleged fear of future harm; and (3) a claim for prospective injunctive relief against the United States based on alleged fear of future harm. *See* (Doc. ## 26,

---

[1] The Court draws the following factual allegations from the Complaint (Doc. # 21) and assumes they are true for the purposes of the instant Motion to Dismiss. *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991) ("A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff.").

28).[2] Plaintiff seeks ten million dollars in damages, for all officials to be disciplined, and to be "removed" from USP Florence. (Doc. # 21 at 7.)

On July 13, 2020, Defendants filed the instant Motion to Dismiss, in which they assert that Plaintiff's individual-capacity claim against Defendant Shaw should be dismissed under Fed. R. Civ. P. 12(b)(6) for lack of a *Bivens* remedy, and that Plaintiff's claims for injunctive relief against Defendant United States of America and Defendant Shaw in his official capacity fail for lack of standing under Fed. R. Civ. P. 12(b)(1). *See generally* (Doc. # 68). On July 20, 2020, Defendant Shaw individually filed the instant Partial Motion for Summary Judgment, wherein he seeks summary judgment on Plaintiff's Eighth Amendment excessive force claim against him in his individual capacity. (Doc. # 70.) This Court referred both motions to Judge Hegarty, who issued his Recommendation on September 10, 2020. (Doc. ## 69, 73, 96.) Plaintiff timely filed an Objection to Magistrate Judge Michael E. Hegarty Recommendation ("Objection"). (Doc. # 99.) Defendants filed a Response. (Doc. # 101.)

## II.   **LEGAL STANDARDS**

### A.   **REVIEW OF A RECOMMENDATION**

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de*

---

[2] In his Complaint, Plaintiff also stated claims against then-Defendants D. Keehan, J. Welch, and J. Bonetto. On December 17, 2019, Magistrate Judge Gordon P. Gallagher issued a recommendation to dismiss said Defendants without prejudice for Plaintiff's failure to comply with Fed. R. Civ. P. 8 and to dismiss without prejudice any monetary claims against Defendant United States, or against Defendant Shaw in his official capacity, based on sovereign immunity. (Doc. # 26.) Senior Judge Lewis T. Babcock adopted Judge Gallagher's recommendation on January 10, 2020. (Doc. # 28.) Accordingly, Plaintiff's remaining claims are asserted against Defendant United States of America and Defendant Shaw as described herein.

*novo* any part of the magistrate judge's [recommended] disposition that has been

properly objected to." An objection is properly made if it is both timely and specific.

*United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d

1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept,

reject, or modify the recommended disposition; receive further evidence; or return the

matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a

magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*,

927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)

(stating that "[i]t does not appear that Congress intended to require district court review

of a magistrate's factual or legal conclusions, under a de novo or any other standard,

when neither party objects to those findings.")).

## B.   *PRO SE* PLAINTIFF

Plaintiff proceeds *pro se*. The Court, therefore, reviews "his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys." *Trackwell v. U.S*., 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).

However, a *pro se* litigant's "conclusory allegations without supporting factual

averments are insufficient to state a claim upon which relief can be based." *Hall v.

Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S.

519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir.

1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Nor does *pro se* status entitle a litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## C.      FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of

truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### III.   DISCUSSION

The Court's analysis will proceed in two steps. First, the Court will review the portions of the Recommendation to which neither party objects in order to determine whether there are any clear errors in Judge Hegarty's findings and conclusions. Second, the Court will conduct a *de novo* review of the portion of the Recommendation to which Plaintiff objects.

### A.   CLEAR ERROR REVIEW

Neither party objected to the following determinations by Judge Hegarty:

1. that Plaintiff has failed to allege a threat of injury to Plaintiff by Defendant
   Shaw, any other prison official, or Defendant United States of America that is

real and immediate, as opposed to conjectural or hypothetical (Doc. # 96 at 7);

2. that, therefore, Plaintiff's claims for injunctive relief against Defendant Shaw in his official capacity and against the United States should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of standing to sue for injunctive relief (*id.* (first quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991); then quoting *Redmond v. Crowther*, 882 F.3d 927, 942 (10th Cir. 2018))); and

3. that the Court should not extend *Bivens* to cover Plaintiff's excessive force claim against Defendant Shaw in his individual capacity in this case because potential alternative remedies and special factors exist that weigh against extending *Bivens* (*id.* at 9–11).

The Court has reviewed the relevant pleadings concerning the above claims as well as the Recommendation. Based on this review, the Court concludes that Judge Hegarty's thorough and comprehensive analyses and recommendations are correct, and "there is no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's note. Therefore, the Court adopts the applicable portions of the Recommendation, and grants in part and denies in part Defendants' Motion to Dismiss in accordance with said portions of the Recommendation. *See Summers*, 927 F.2d at 1167 (explaining that in the absence of a timely objection, "the district court may review a magistrate [judge's] report under any standard it deems appropriate."). Plaintiff's claims for injunctive relief against the United States and Defendant Shaw in his official capacity are dismissed for lack of standing under Fed. R. Civ. P. 12(b)(1).

**B.** *DE NOVO* REVIEW

Liberally construing Plaintiff's Objection, the Court finds that Plaintiff objects to the Recommendation to the extent it concludes that Plaintiff's Eighth Amendment excessive force claim against Defendant Shaw in his official capacity should be dismissed for lack of a *Bivens* remedy.[3] Plaintiff asserts that his excessive force claim against Defendant Shaw should be allowed to proceed in this case because courts have previously recognized excessive force claims brought by prisoners against prison officials. Accordingly, the Court construes Plaintiff's Objection to dispute Judge Hegarty's findings and conclusions with respect to whether Plaintiff's excessive force claim presents a new *Bivens* context under the first step of the two-step test articulated by the Supreme Court in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). The Court agrees with Judge Hegarty's conclusion that Plaintiff's excessive force claim should be dismissed for lack of a *Bivens* remedy.

1.   Applicable Law

In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights" in the context of a Fourth Amendment unreasonable search and seizure claim. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66

---

[3] Plaintiff also raises additional allegations concerning Defendant Shaw's conduct at USP Florence that are not included in his Complaint. It is well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss or through objections to the Recommendation. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint) (citation omitted); *Wilson v. Jenks*, Case No. 12–CV– 02495–RM–KMT, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014) (same). Therefore, the Court declines to consider new factual allegations raised for the first time in Plaintiff's Objection.

(2001). In doing so, the Supreme Court "held that a right of action to enforce the [F]ourth [A]mendment affirmatively *does* exist, even though neither the [F]ourth [A]mendment itself nor any statute enacted by Congress expressly says as much." LARRY W. YACKLE, Federal Courts 260 (3d ed. 2009) (citing *Bivens*, 403 U.S. at 395–97). Since 1971, the Supreme Court has expanded the scope of *Bivens* only twice. *See Davis v. Passman*, 442 U.S. 228 (1979) (involving Fifth Amendment equal protection claim); *see also Carlson v. Green*, 446 U.S. 14 (1980) (involving Eighth Amendment failure to provide adequate medical care claim). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

In *Ziglar v. Abbasi*, the Supreme Court made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (citation omitted). The Court adopted a two-step test to determine when *Bivens* may apply in unrecognized contexts. At step one, courts must determine whether a claim presents a "new *Bivens* context." *Id.* at 1859. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Id.* By way of example, the Court noted that

> [a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. Additionally, the context may be different "[e]ven though the right and the

mechanism of injury [are] the same . . . ." Thus, a single meaningful difference in "almost parallel circumstances" is sufficient to satisfy the first step of the *Ziglar* test, and the "new context inquiry is easily satisfied." *Id.* at 1860, 1865.

If a court finds that a claim presents a new *Bivens* context, the analysis moves to step two—i.e., a determination of whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (citation omitted). If such factors exist, the court should not extend "a *Bivens*-type remedy" to the claim at issue. *Id.* at 1859. The Court instructed that

> the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action. Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative.

*Id.* at 1857–58. The Court indicated that, when lower courts conduct the "special factors" analysis, they should consider whether there are "alternative remedies available or other sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy . . . ." *Id.* at 1865 (internal quotation marks omitted). The Court reframed the "special factors" inquiry as a question of "'who should decide' whether to provide for a damages remedy, Congress or the courts?" and explained that the "answer will most often be Congress." *Id.* at 1857. Thus, step two of the *Ziglar* test creates a low bar for defendants and a high bar for plaintiffs.

    2.   <u>Application</u>

        a.   *Step one of the Ziglar test*

In the instant case, the Court agrees with Judge Hegarty's conclusion that Plaintiff's Eighth Amendment excessive force claim against Defendant Shaw presents a

new *Bivens* context under *Ziglar*. As explained above, the Supreme Court has recognized an implied cause of action for damages in three contexts only—i.e., a Fourth Amendment unreasonable search and seizure claim (*Bivens*), a Fifth Amendment equal protection claim (*Davis*), and an Eighth Amendment failure to provide adequate medical care claim (*Carlson*). Plaintiff's excessive force claim against Defendant Shaw asserts a different constitutional right than *Bivens*, *Carlson*, or *Davis*. This meaningful difference is sufficient to satisfy the first step of the *Ziglar* test. *See, e.g.*, *Ziglar*, 137 S. Ct. at 1865 (finding plaintiff's Eighth Amendment claim for failure to provide adequate medical care presented a different *Bivens* context from the same claim in *Carlson* on the basis that one case involved federal prison officials and the other involved a private prison operator).

In arguing that his claim against Defendant Shaw should be allowed to proceed in this case, Plaintiff cites to three cases for the proposition that courts have previously recognized excessive force claims brought by prisoners against prison officials. (Doc. # 99 at 2–3.) Importantly, each case cited by Plaintiff involved claims brought by a state prisoner, as opposed to a federal prisoner. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992) (petitioner brought excessive force claim under 42 U.S.C. § 1983 for events that occurred while he was incarcerated in a state penitentiary); *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006) (same); *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1390 (8th Cir. 1997) (same). As all three cases were brought under § 1983 by state prisoners, they did not involve a *Bivens* analysis and are inapposite to this case.

    *b.  Step two of the Ziglar test*

The Court notes that Plaintiff did not specifically object to Judge Hegarty's findings or conclusions with respect to step two of the *Ziglar* test. Nonetheless, the Court has reviewed the matter *de novo* and further agrees with Judge Hegarty's conclusion that special factors in this case counsel against extending a *Bivens* remedy.

The Supreme Court has indicated that when lower courts conduct the "special factors" analysis, they should consider whether alternative remedies exist. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action[,]" for Congress' creation of 'any alternative, existing process for protecting the [plaintiff's] interest' . . . may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Ziglar*, 137 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

In this case, alternative remedies exist for Plaintiff. First, Plaintiff may file a grievance against Defendant Shaw through the Bureau of Prisons' ("BOP") Administrative Remedy Program. The Supreme Court has previously recognized BOP's Administrative Remedy Program as an adequate alternative remedy to *Bivens. See Malesko*, 534 U.S. at 74 (declining to extend *Bivens* remedy to plaintiff who had "full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program[,] . . . [which] provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."). Consistent with the Supreme Court's reasoning in *Malesko*, courts in this district have found the BOP Administrative

12

Remedy Program to be an alternative remedy that counsels against extending *Bivens*. *See Ajaj v. Fed. Bureau of Prisons*, 15-cv-00992-RBJ-KLM, 2017 WL 219343, at *2–3 (D. Colo. Jan. 17, 2017); *Lovett v. Ruda*, 17-cv-02010-PAB-KLM, 2018 WL 4659111, at *8 (D. Colo. Sept. 28, 2018). Moreover, Plaintiff may assert a claim against Defendant Shaw through the Federal Tort Claims Act. *See Turkmen v. Ashcroft*, No. 02CV2307DLISMG, 2018 WL 4026734, at *10 (E.D.N.Y. Aug. 13, 2018) (collecting cases that have declined to permit *Bivens* claims to proceed because the FTCA provides an adequate alternative remedy); *see also Morgan v. Shivers*, No. 1:14-CV-7921-GHW, 2018 WL 618451, at *5-6 (S.D.N.Y. Jan. 29, 2018) (declining to extend *Bivens* to pre-trial detainee's Fifth Amendment excessive force claim because the FTCA provides an alternative remedy). These alternative remedies constitute special factors that weigh against extending a *Bivens* remedy to Plaintiff's excessive force claim. Accordingly, pursuant to *Ziglar*, the Court declines to extend *Bivens* to create an implied private action for damages in this case.

## IV.   **CONCLUSION**

For the foregoing reasons, it is ORDERED as follows:

- the September 10, 2020 Recommendation of United States Magistrate Judge (Doc. # 96) is AFFIRMED AND ADOPTED as an Order of this Court;

- Defendants' Motion to Dismiss (Doc. # 68) is GRANTED;

- Plaintiff's claims for injunctive relief against Defendant United States of America and Defendant Shaw, in his official capacity, are DISMISSED WITHOUT PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing;[4]

- Plaintiff's Eighth Amendment excessive force claim against Defendant Shaw in his individual capacity is DISMISSED WITH PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(6) for lack of a *Bivens* remedy;[5]

- Defendant Shaw's Partial Motion for Summary Judgment (Doc. # 70) is DENIED AS MOOT; and

- The Clerk of Court is directed to close this case.

DATED: December 29, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

[4] Dismissal for lack of jurisdiction, including lack of standing, must be without prejudice. *See, e.g., Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006); *Albert v. Smith's Food & Drug Ctrs., Inc.,* 356 F.3d 1242, 1249 (10th Cir. 2004); *Martinez v. Richardson,* 472 F.2d 1121, 1126 (10th Cir. 1973) ("It is fundamental . . . that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore . . . must be without prejudice.").

[5] Whether there is a *Bivens* remedy for Plaintiff's Eighth Amendment excessive force claim against Defendant Shaw is a question of law. Accordingly, the deficiencies in Plaintiff's excessive force claim cannot be cured by further amendment of his Complaint, and dismissal with prejudice is warranted. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (explaining "amendment is futile if the complaint, as amended, would be subject to dismissal.").

# ATTACHMENT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02563-CMA-MEH

ANDERSON COUTINHO SILVA,

     Plaintiff,

v.

UNITED STATES OF AMERICA, and
BRANDON SHAW,

     Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

     Plaintiff Anderson Coutinho Silva ("Plaintiff") brings claims in his Amended Prisoner

Complaint ("Complaint") against both the United States, and C.O. Brandon Shaw ("Shaw") in his

individual and official capacities.  ECF 21.  Defendants have filed the present motion to dismiss,

and Shaw has filed the present motion for partial summary judgment as to the individual capacity

claim.  ECF 68, 70.  Both motions are fully briefed[1] and have been referred to this Court.  ECF 69,

_____

[1] On August 7, 2020, Plaintiff filed an "Opposition [to the] Motion to Dismiss" ("Response")
(ECF 77) and an "Opposition [to the] Motion for Partial Summary Judgment" (ECF 78).
Plaintiff filed these documents following a scheduling conference with the Court on July 22,
2020, where the Court instructed Plaintiff to respond to Defendants' motions on or before
August 10, 2020.  ECF 74.  Defendants filed their replies on August 20, 2020.  ECF 83, 84.
Subsequently, Plaintiff filed two additional documents titled, "In Support and Reply to Motion to
Dismiss by Defendants" (ECF 93) and "Opposition in Reply to Defendants' Motion for Partial
Summary Judgment" (ECF 95).  Though ECF 93 is dated September 4, 2020 and ECF 95 is
dated September 8, 2020, they were not placed on the docket (*i.e.* brought to the Court's
attention) until September 9, 2020.  Regardless, Plaintiff did not seek leave to file surreplies and
no such reply is contemplated by the Federal Rules of Civil Procedure.  Accordingly, the Court
does not consider them for purposes of this Recommendation.

73. As set forth below, this Court respectfully recommends that the Defendants' motion to dismiss be **granted**, and the motion for partial summary judgment be **denied as moot**.

## **BACKGROUND**

### I.      Procedural Background

Plaintiff is an inmate at the United States Penitentiary in Florence, Colorado ("USP Florence"). He filed his original, *pro se* complaint on September 9, 2019. *See* ECF 1. During initial screening, Magistrate Judge Gordon P. Gallagher ordered Plaintiff to file an amended prisoner complaint to cure certain deficiencies. ECF 17. Plaintiff did so on November 18, 2019. ECF 18. However, Plaintiff filed another amended complaint (the operative "Complaint") on December 2, 2019. ECF 21. Plaintiff asserted claims against the United States, Shaw, "J. Welch, C.O.," "C.O. D. Keehan," and "C.O. J. Bonetto." *Id.* Judge Gallagher ordered that the case be reassigned on December 16, 2019, at which point Senior District Judge Lewis T. Babcock became the presiding judicial officer. ECF 24, 25. On December 17, 2019, Magistrate Judge Gallagher issued a recommendation to dismiss without prejudice then-Defendants D. Keehan, J. Welch, and J. Bonetto for Plaintiff's failure to comply with Fed. R. Civ. P. 8 and to dismiss without prejudice any monetary claims against the United States, or against Shaw in his official capacity based on sovereign immunity. ECF 26. Senior Judge Babcock accepted and adopted the recommendation on January 10, 2020 and ordered the remaining claims in the case to be drawn to a district judge and magistrate judge. ECF 28. Tthe case was assigned to District Judge Christine M. Arguello and referred to the undersigned.

### II.      Factual Background

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Complaint, which are taken as true for

analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff alleges that Defendant Shaw entered his prison cell as Shaw was completing cell rotations.  ECF 21 at 5.  Shaw proceeded to assault Plaintiff while completely inside Plaintiff's cell, out of the view of any cameras.  *Id.*  Plaintiff "was in restraints" at the time of the assault.  *Id.*  Shaw slammed Plaintiff "on the floor in the show[e]r" and jumped on Plaintiff's back using his knee.  *Id.*  Shaw requested assistance, and C.O. J. Welch, D. Keehan, and J. Bonetto arrived in response.  *Id.*  Plaintiff suffered injuries to his back, right leg, and left hand.  *Id.*  Plaintiff asserts that Shaw's co-workers attempted to conceal the assault by claiming he tried to attack the staff.  *Id.*  Plaintiff seeks ten million dollars in damages, for all officials to be disciplined, and to be "removed" from USP Florence.  *Id.* at 7.

## LEGAL STANDARDS

### I.      Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of

jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion to dismiss launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

## II.     Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires

a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 680.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. In the context of a pro se litigant, the "pleadings are to be liberally construed." *Farrell v. Ramsey*, 28 F. App'x 751, 753 (10th Cir. 2001).

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,

556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief."  *Id.* (quotation marks and citation omitted).

## ANALYSIS

When construed liberally, and pursuant to Magistrate Judge Gallagher's adopted recommendation, Plaintiff brings three claims for relief.  First, he asserts a claim for prospective injunctive relief against Shaw in his official capacity.  Second, he asserts the same claim against the United States.  Third, Plaintiff asserts a *Bivens* claim for excessive force against Shaw in his individual capacity.  The Defendants raise two arguments in their motion to dismiss.  They argue the injunctive relief claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing.  As for the *Bivens* claim, Shaw seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for lack of a *Bivens* remedy.  In the alternative, Shaw requests the Court grant summary judgment.  For the following reasons, the Court respectfully recommends dismissal of all claims.

**I.     Motion to Dismiss**

 **A. ** <u>Plaintiff Lacks Standing to Bring Injunctive Relief Claims</u>

Defendants assert that Plaintiff lacks standing to bring claims for injunctive relief against the United States and Shaw in his official capacity.  Mot. at 9–11.  Plaintiff responds that his claim is necessary "to prevent future injury to said Plaintiff and other inmates."  Resp. at 3.

"Plaintiffs have the burden to demonstrate standing for each form of relief sought." *Redmond v. Crowther*, 882 F.3d 927, 942 (10th Cir. 2018) (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006)).  "[I]f a plaintiff seeks injunctive relief based on the threat of future harm, the 'threat of injury must be both real and immediate, not conjectural or hypothetical.'"  *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)).  Although a plaintiff who has

been constitutionally injured may recover damages, "that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). "[P]ast exposure of illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102.

In *Redmond*, the plaintiff asserted a claim for injunctive relief against prison officials to comply with written policies concerning deployment of tear gas. 882 F.3d at 933–34. The plaintiff there contended that improper use of tear gas was likely to recur. *Id.* at 942. The Tenth Circuit held that the plaintiff lacked standing on the injunctive relief claim, because Plaintiff's argument of recurrence was "'contingent upon speculation or conjecture' and thus 'beyond the bounds of a federal court's jurisdiction.'" *Id.* (quoting *Lippoldt*, 468 F.3d at 1218).

In this case, Plaintiff seeks injunctive relief from Defendants in the form of discipline for Shaw and release from prison. *See* ECF 21 at 7. Plaintiff argues that the threat posed by Shaw "is real and not hypothetical," and he "does not want to suffer continual[] injury or be under real and immediate threat of life." Resp. at 3. Yet, Plaintiff "offers just speculation that a similar incident will occur." *Redmond*, 882 F.3d at 942. Though the Court takes Plaintiff's allegations as true, there is no basis to conclude that Plaintiff alleges evidence of "a good chance of being likewise injured in the future." *Facio*, 929 F.2d at 544.

For these reasons, this Court respectfully recommends that the motion to dismiss be **granted** with respect to the injunctive relief claims against the United States and Shaw in his official capacity.

B.    Plaintiff Fails to State a *Bivens* Claim Against Shaw

Shaw argues that Plaintiff's claim against him in his individual capacity should be dismissed for lack of *Bivens* remedy.  Mot. at 4–9.  Plaintiff responds simply that he "does not fail to state a claim upon which relief may be granted."  Resp. at 3.

In *Bivens v. Six Unknown Fed. Narcotics Agents*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  The Supreme Court has recognized the *Bivens* remedy in only three cases: (1) *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) (a Fourth Amendment unreasonable search and seizure claim); (2) *Davis v. Passman*, 442 U.S. 228 (1979) (a Fifth Amendment equal protection claim concerning gender discrimination); and (3) *Carlson v. Green*, 446 U.S. 14 (1980) (an Eighth Amendment failure to provide adequate medical treatment claim).  "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."  *Ziglar v. Abbasi*, - U.S. -, 137 S. Ct. 1843, 1855 (2017).

"[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Id.* at 1857.  The Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"  *Id.* (quoting *Corr. Servs. Corp.*, 534 U.S. at 68.  "If [a] case is different in a meaningful way from previous *Bivens* cases decided by [the] Supreme] Court, then the context is new."  *Id.* at 1859.  "[E]ven a modest extension is still an extension."  *Id.* at 1864.  A court may consider the following factors in determining whether a case might differ in a meaningful way:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive

intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

Here, Plaintiff's allegations involve a different type of "official action" than those alleged in *Carlson*, *Davis*, and *Bivens*. Plaintiff's case concerns a correctional official's treatment of an inmate while on rounds, as opposed to an official's medical treatment of an inmate like in *Carlson*, a police officer's arrest of a suspect like in *Bivens*, and a Congressman's actions toward staff in *Davis*. Moreover, Plaintiff's case involves a different constitutional right. He does not bring an Eighth Amendment deliberate indifference claim (as in *Carlson*), a Fourth Amendment unreasonable search and seizure claim (as in *Bivens*), nor a Fifth Amendment equal protection claim (as in *Davis*). Rather, Plaintiff brings an Eighth Amendment excessive force claim. As another court has commented, "[t]he Supreme Court has not expressly approved of an implied damages remedy under *Bivens* for Eighth Amendment excessive force." *McLean v. Gutierrez*, No. ED CV 15-275-RGK (SP), 2017 WL 6887309, at *18 (C.D. Cal. Sept. 28, 2017). Additionally, other courts have found that Eighth Amendment excessive force claims constitute a novel *Bivens* context. *See, e.g.*, *Brown v. Nash*, No. 18-cv-528, 2019 WL 7562785, at *5 (S. D. Miss. Dec. 13, 2019), *report and recommendation adopted*, 2020 WL 129101 (S.D. Miss. Jan. 10, 2020); *Ramirez v. Tatum*, No. 17-cv-7801, 2019 WL 2250339, at *2 (S.D.N.Y. May 24, 2019); *Taylor v. Lockett*, No. 17-cv-00023, 2019 WL 764023, at *7 (M.D. Fla. Feb. 21, 2019); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1170 (E.D. Cal. 2018). The Court agrees and finds Plaintiff's claim presents a new context for a *Bivens* remedy.

Next, the Court considers whether to extend the *Bivens* remedy in this case. "[A] *Bivens* remedy will not be available if there are 'special factors counseling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18).

One special factor is "an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858.

In this case, an alternative remedy exists for Plaintiff in the form of the Bureau of Prisons's ("BOP") Administrative Remedy Program. *See Corr. Servs. Corp.*, 534 U.S. at 74 ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program."). Other courts in this district have rejected the creation of a new *Bivens* remedy based, in part, on the availability of the BOP's grievance program as an alternative remedy. *See Ajaj v. Fed. Bureau of Prisons*, 15-cv-00992-RBJ-KLM, 2017 WL 219343, at *2–3 (D. Colo. Jan. 17, 2017) ("[F]iling a grievance as part of the BOP's administrative remedy program" is an adequate alternative remedy.); *Lovett v. Ruda*, 17-cv-02010-PAB-KLM, 2018 WL 4659111, at *8 (D. Colo. Sept. 28, 2018) ("[G]rievances filed through the BOP's Administrative Remedy Program constitute alternative means of preventing unconstitutional conduct in the prison context.").

Further, as Shaw argues, the Court finds two other potential alternative remedies. Mot. at 7. First, Plaintiff may assert a claim through the Federal Tort Claims Act ("FTCA"). *See Turkmen v. Ashcroft*, 2018 WL 4026734, at *10 (E.D.N.Y. Aug. 13, 2018) (collecting other cases since *Ziglar* declining "to permit *Bivens* claims to proceed because the FTCA provides an adequate alternative remedy"). "[I]f Congress has created 'any alternative, existing process for protecting the [injured party's] interest'[,] that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Ziglar*, 137 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). In enacting the FTCA, Congress has created an alternative remedial structure for intentional torts, such as those allegedly suffered by Plaintiff. Second, Plaintiff may seek mandamus. *See* 28 U.S.C. § 1361; *Lovett*, 2018 WL

10

4659111, at *8–9. The alternative remedy "need not compensate a plaintiff with monetary damages in order to be adequate alternatives." *Ajaj*, 2017 WL 219343, at *3 n.8 (citing *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 862–63 (10th Cir. 2016)). With these two alternative remedies, the Court finds an extension of *Bivens* unwarranted.

Furthermore, there are special factors that caution against extending a *Bivens* remedy in this case. Extending the remedy would create "a superfluous way for prisoners to gain relief by suing prison employees individually . . . interfe[ring] with prison management and add to the Court's already heavy burden of prisoner litigation." *Huerta v. Oliver*, 17-cv-00988-RBJ-KLM, 2019 WL 399229, at *17 (D. Colo. Jan. 31, 2019). Also, "the enactment of the [Prison Litigation Reform Act ("PLRA")] suggests that Congress does not want to provide federal inmates with a damages remedy." *Abdo v. Balsick*, 18-cv-01622-KMT, 2019 WL 6726230, at *7 (D. Colo. Dec. 11, 2019) (citing *Ziglar*, 137 S. Ct. at 1865). As recognized in *Ziglar*, the PLRA "made comprehensive changes to the way prisoner abuse claims must be brought in federal court," such that "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Ziglar*, 137 S. Ct. at 1865. The lack of a monetary remedy in the PLRA cuts against the extension of a *Bivens* remedy.

Considering the totality of the factors, including the availability of alternative remedies and other special factors, the Court finds no authority to recognize a *Bivens* remedy in Plaintiff's case. Therefore, this Court recommends that the motion to dismiss with respect to the claim against Shaw in his individual capacity be **granted** for failure to state a claim.

## II.    Motion to Amend

There is no pending motion to amend Plaintiff's Complaint;[2] nonetheless, the Court will

consider whether to recommend such amendment *sua sponte*.  Generally, in a case involving a *pro*

*se* litigant, the Tenth Circuit has held that if "it is at all possible that the party against whom the

dismissal is directed can correct the defect in the pleading or state a claim for relief, the court

should dismiss with leave to amend."  *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir.

1990).  "Particularly where deficiencies in a complaint are attributable to oversights likely the

result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the

complaint without prejudice is preferable."   *Id.*    However, "[c]omplaints drafted by pro se

litigants . . . are not insulated from the rule that dismissal with prejudice is proper for failure to

state a claim when 'it is obvious that the plaintiff cannot prevail on the facts he has alleged and it

would be futile to give him the opportunity to amend.'"  *Fleming v. Coulter*, 573 F. App'x 765,

769 (10th Cir. 2014) (quoting *Perkins v. Kan. Dep't of Corre.*, 165 F.3d 803, 806 (10th Cir. 1999)).

In this case, Plaintiff, a *pro se* prisoner, requests the Court "lower the bar for said Plaintiff

because said Plaintiff is a foreigner and does not speak nor write[] English well."  Resp. at 2.  In

this Recommendation, Plaintiff has been afforded all proper and even liberal construction in

review of his Complaint.  *See Farrell*, 28 F. App'x at 753.  The Court's recommendation to dismiss

---

[2] On August 24, 2020, Plaintiff moved for leave to file an amended complaint.  ECF 85.  The Court denied Plaintiff's motion without prejudice for failure to comply with this District's Local Rules.  *See* ECF 87 (Pursuant to D.C. Colo. LCivR 15.1(b), Plaintiff failed to attach "a proposed amended complaint" that prevented the Court from determining "whether justice requires leave be granted.").  Plaintiff did not file a corrected amended complaint.  On September 8, 2020, Plaintiff submitted a "Statement of Claims," concerning actions by a "C.O. J. Medrano."  If Plaintiff intended this "Statement of Claims" to amend his Complaint, he failed to comply with D.C. Colo. LCivR 15.1(b) by first seeking leave to amend and not attaching "as an exhibit a copy of the proposed amended or supplemental pleading which strikes through the text to be deleted and underlines the text to be added."  Nevertheless, this "Statement of Claims" has no bearing on Plaintiff's allegations against Defendants.

Plaintiff's Complaint does not stem from "deficiencies . . . attributable to oversights [in] . . . [Plaintiff's] ignorance of special pleading requirements." *Reynoldson*, 907 F.2d at 126. Rather, despite Plaintiff's allegations, the Court finds, as a matter of law, that Plaintiff lacks standing to bring injunctive relief claims and that a *Bivens* remedy is not available to Plaintiff. There is no "potentially curable defect in the plaintiff's allegations," meriting the opportunity for Plaintiff to re-file. *Stubblefield v. Henson*, No. 92-1045, 1993 WL 55936, at *2 (10th Cir. 1993).

Therefore, this Court recommends that Judge Arguello not allow an amendment of the Complaint.

## III.   Motion for Summary Judgment

Shaw also filed a motion for partial summary judgment as to the claim against him in his individual capacity.  ECF 70.  That motion is fully briefed and has been referred to this Court. ECF 73.  As stated above, the Court recommends granting Defendants' motion to dismiss all claims, including the claim against Shaw in his individual capacity.  Thus, if Judge Arguello accepts and adopts this Court's recommendation, there is no longer a viable claim against Shaw. Accordingly, the Court recommends the motion for partial summary judgment be **denied as moot**.

## <u>CONCLUSION</u>

The Court respectfully RECOMMENDS that Judge Christine M. Arguello **GRANT** the Defendants' motion to dismiss [<u>filed July 13, 2020; ECF 68</u>] as follows:  (1) dismiss without prejudice the injunctive relief claims against the United States and Shaw (in his official capacity) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing; and (2) dismiss with prejudice the excessive force claim against Shaw (in his individual capacity) pursuant to Fed. R. Civ. P. 12(b)(6) for lack of a *Bivens* remedy.  Additionally, the Court respectfully RECOMMENDS Judge Arguello

**DENY AS MOOT** Shaw's motion for partial summary judgment [filed July 20, 2020; ECF 70] based on the recommendation to dismiss the individual capacity claim with prejudice.[3]

Respectfully submitted this 10th day of September, 2020, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[3] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court.  *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

14

# ATTACHMENT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 19-cv-02563-CMA-MEH

ANDERSON COUTINHO SILVA,

     Plaintiff,

v.

UNITED STATES OF AMERICA, AND
BRANDON SHAW,

     Defendants.

---

## FINAL JUDGMENT

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the ORDER ADOPTING RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE, Doc No. 103 of Judge Christine M. Arguello entered on December 29, 2020 it is

ORDERED that Recommendation of United States Magistrate Judge (Doc. No. 96) is AFFIRMED and ADOPTED.   It is

FURTHER ORDERED that Defendants' Motion To Dismiss (Doc. No. 68) is GRANTED.   It is

FURTHER ORDERED that the Plaintiff's claims for injunctive relief against Defendant United States of America and Defendant Brandon Shaw, in his official capacity, are DISMISSED WITHOUT PREJUDICE pursuant to Fed.R.Civ.P. 12(b)(1) for lack of standing.   It is

FURTHER ORDERED that the Plaintiff's Eighth Amendment excessive force claim against Defendant Brandon Shaw, in his individual capacity, is DISMISSED WITH PREJUDICE pursuant to Fed.R.Civ.P. 12(b)(6) for lack of a *Bivens* remedy.   It is

FURTHER ORDERED that Defendant Brandon Shaw's Parial Motion for Summary Judgment (Doc. No. 70) is DENIED AS MOOT.   It is

FURTHER ORDERED that the Clerk of Court close this case.

Dated at Denver, Colorado this 29th day of December, 2020.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK

By:   s/   *B. Abiakam*

B. Abiakam
Deputy Clerk