No. 21-1008

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

**ANDERSON COUTINHO SILVA**,
Plaintiff-Appellant,

v.

**UNITED STATES OF AMERICA AND
BRANDON SHAW**,
Defendants-Appellees.

---

**APPELLEES' ANSWER BRIEF**

---

On Appeal from the United States District Court
For the District of Colorado
The Honorable Christine M. Arguello
D.C. No. 1:19-CV-02563-CMA-MEH

---

MATTHEW T. KIRSCH
Acting United States Attorney

KARL L. SCHOCK
Assistant U.S. Attorney
1801 California Street
Suite 1600
Denver, CO 80202
(303) 454-0100

Attorneys for Plaintiff-Appellee
United States of America

**ORAL ARGUMENT NOT REQUESTED**

October 25, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

STATEMENT OF RELATED CASES....................................................v

JURISDICTIONAL STATEMENT ......................................................vi

STATEMENT OF ISSUES ................................................................ 1

STATEMENT OF THE CASE ............................................................ 2

SUMMARY OF ARGUMENT ........................................................... 6

STANDARD OF REVIEW ................................................................ 8

ARGUMENT ................................................................................ 8

    I.    Silva waived the arguments he makes on appeal by
        failing to make those specific objections below—
        particularly as to the second prong of the *Bivens*
        framework. ....................................................... 10

    II.   The district court correctly concluded that Silva's
        excessive force claim presents a new *Bivens* context. ................ 14

    III. The district court correctly concluded that special
        factors counsel against extending *Bivens* to this new
        context. ........................................................... 22

        A.  Silva had alternative remedies for the alleged
            harm through the BOP grievance process and the
            FTCA. ....................................................... 24

        B.  Other special factors counsel hesitation in
            extending *Bivens* to the prison excessive force
            context. ..................................................... 28

CONCLUSION ........................................................................... 34

CERTIFICATE OF COMPLIANCE.................................................... 35

CERTIFICATE OF SERVICE ........................................................... 36

i

# TABLE OF AUTHORITIES

## Federal Cases

*Ali v. Duboise*,
  763 F. App'x 645 (10th Cir. 2019) (unpublished) ................................. 20

*Ali v. Duboise*,
  2017 WL 5930292 (N.D. Okla. Nov. 30, 2017) (unpublished) ............ 21

*Apodaca v. Corizon Health Care*,
  752 F. App'x 551 (10th Cir. 2018) (unpublished) ................................. 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 2, 8

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971) ...................................................................... *passim*

*Brown v. Nash*,
  2019 WL 7562785 (S.D. Miss. Dec. 13, 2019) (unpublished) ............. 18

*Callahan v. Fed. Bureau of Prisons*,
  965 F.3d 520 (6th Cir. 2020) .............................................................. 25

*Carlson v. Green*,
  446 U.S. 14 (1980) ........................................................................ *passim*

*Cooper Indus., inc v. Avial Servs., Inc.*,
  543 U.S. 157 (2004) ........................................................................... 20

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001) ......................................................................... 25, 26

*Davis v. Passman*,
  442 U.S. 228 (1979) .............................................................................. 8

*Edwards v. Balisok*,
  520 U.S. 641 (1997) ........................................................................... 26

*Farah v. Weyker*,
  926 F.3d 492 (8th Cir. 2019) .............................................................. 23

*Farmer v. Brennan*,
    511 U.S. 825 (1994) .......................................................... 12, 16, 17, 20

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ......................................................................... 27

*Green v. Corr. Corp. of Am.*,
    401 F. App'x 371 (10th Cir. 2010) (unpublished) ................................ 21

*Hernandez v. Mesa*,
    140 S.Ct. 735 (2020) .............. 9, 14, 15, 18, 19, 22, 23, 24, 26, 29, 33, 34

*Hunt v. Matevousian*,
    336 F. Supp. 3d 1159 (E.D. Cal. 2018) ......................................... 18, 25

*Kelly v. Scott*,
    1999 WL 1101815 (10th Cir. Dec. 3, 1999) (unpublished) ................. 21

*Laubach v. Scibana*,
    301 F. App'x 832 (10th Cir. 2008) (unpublished) ................................ 13

*Leggett v. Clark*,
    1994 WL 589445 (10th Cir. Oct. 28, 1994) (unpublished) .................. 21

*Macklin v. Dowling*,
    822 F. App'x 720 (10th Cir. 2020) (unpublished) ................................ 11

*McCarthy v. Madigan*,
    503 U.S. 140 (1992) ......................................................................... 25

*Milbrook v. United States*,
    569 U.S. 50 (2013) ........................................................................... 27

*Minneci v. Pollard*,
    565 U.S. 118 (2012) ......................................................................... 26

*Morales-Fernandez v. I.N.S.*,
    418 F.3d 1116 (10th Cir. 2005) ............................................. 8, 10, 13, 14

*Peoples v. CCA Detention Ctrs.*,
    422 F.3d 1090 (10th Cir. 2005) .......................................................... vi

*Reid v. United States,*
825 F. App'x 442 (9th Cir. 2020) (unpublished)............................21, 22

*Richards v. Colvin,*
640 F. App'x 786 (10th Cir. 2016) (unpublished)................................10

*Segovia v. Astrue,*
226 F. App'x 801 (10th Cir. 2007) (unpublished)...........................11-12

*Smith v. Colvin,*
625 F. App'x 896 (10th Cir. 2015) (unpublished)................................11

*Strain v. Regalado,*
977 F.3d 984 (10th Cir. 2020) ............................................................8

*Taylor v. Lockett,*
2019 WL 764023 (M.D. Fla. Feb. 21, 2019)
(unpublished)..................................................................18, 25, 30, 31

*Thompson v. Sirmons,*
336 F. App'x 834 (10th Cir. 2009) (unpublished)................................10

*Trackwell v. United States,*
472 F.3d 1242 (10th Cir. 2007) ..........................................................13

*Turkmen v. Ashcroft,*
2018 WL 4026734 (E.D.N.Y. Aug. 13, 2018) (unpublished)....27, 28, 34

*United States v. 2121 E. 30th Street,*
73 F.3d 1057 (10th Cir. 1996) ...........................................................10

*Whitington v. Ortiz,*
472 F.3d 804 (10th Cir. 2007) ...........................................................32

*Whitley v. Albers,*
475 U.S. 312 (1986) ......................................................16, 17, 18, 20, 29

*Wilkie v. Robbins,*
551 U.S. 537 (2007) ...........................................................................25

*Ziglar v. Abbasi,*
137 S.Ct. 1843 (2017) .................................................................*passim*

## Federal Statutes & Regulations

28 U.S.C. § 1291................................................................................vi

28 U.S.C. § 1331................................................................................vi

28 U.S.C. § 1346(b)(1)........................................................................27

28 U.S.C. § 2679(b)(2)(A)...................................................................33

28 U.S.C. § 2680(h)............................................................................27

42 U.S.C. § 1983................................................................ 4, 12, 20, 31

## Federal Regulations

28 C.F.R. § 542.10(a) .........................................................................24

## STATEMENT OF RELATED CASES

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Anderson Coutinho Silva asserted a constitutional claim. *Peoples v. CCA Detention Ctrs.*, 422 F.3d 1090, 1095-96 (10th Cir. 2005) (holding that district court has jurisdiction to determine whether to imply constitutional cause of action); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

This Court has jurisdiction under 28 U.S.C. § 1291 because Silva appeals a final decision of the district court. Final judgment disposing of all claims was entered on December 29, 2020. Aplt. App. at 81-82. Silva filed a timely notice of appeal on January 13, 2021. *Id.* at 83.

## STATEMENT OF ISSUES

I.      Whether Silva waived appellate review by failing to make specific objections to the magistrate judge's conclusions that (a) his Eighth Amendment excessive force claim presented a new *Bivens* context not recognized by the Supreme Court; and (b) special factors counselled hesitation before extending *Bivens* to that new context.

II.     Whether Silva's excessive force claim presents a new *Bivens* context from the deliberate indifference claim recognized by the Supreme Court in *Carlson v. Green*, 446 U.S. 14 (1980).

III.    Whether special factors—including alternative remedial structures, the potential impact on prison security and government operations, and the absence of a statutory remedy—counsel hesitation before extending *Bivens* to the new context of an excessive force claim.

## STATEMENT OF THE CASE

Silva—a prisoner at the United States Penitentiary in Florence, Colorado—filed a complaint against Brandon Shaw, a correctional officer at the prison, asserting a *Bivens* claim for excessive force in violation of the Eighth Amendment. Aplt. App. at 16, 18.[1] Silva alleged that, during cell rotations, Shaw assaulted him out of the view of the range camera. *Id.* at 18. He claimed Shaw "slammed [him] on the floor in the shower" and "jumped on [his] back," injuring his back, leg, and hand.[2] *Id.* Silva sought $10 million in damages, for "all officials to be disciplined," and "to be removed from the ADX."[3] *Id.* at 20.

Shaw moved to dismiss the damages claim against him in his individual capacity for lack of a *Bivens* remedy. Aplt. App. at 24-32. He

---

[1] Silva also asserted claims against the United States and three other individuals, but those claims are not at issue in this appeal.

[2] A disciplinary hearing officer found *Silva* guilty of attempted assault (and refusing a direct order) as a result of this incident, thus rejecting Silva's account. R. Vol. 1 at 159-60 (Dkt. #70 & 70-1) (Mot. for Partial Summ. J. & supporting declaration). But because this appeal arises on a motion to dismiss, this Court must accept as true the facts alleged in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] The non-monetary claims were dismissed and are not at issue in this appeal. Aplt. App. at 53-54.

2

liberally construed the complaint as attempting to state an Eighth

Amendment excessive force claim under *Bivens*. *Id.* at 26. That claim,

Shaw argued, presented a new *Bivens* context that has not been

recognized by the Supreme Court. *Id.* at 28-30. He further argued that

several factors counseled hesitation in extending *Bivens* to this new

context, including the availability of alternative remedial processes,

interference with prison management, and the absence of a damages

remedy in the Prison Litigation Reform Act (PLRA). *Id.* at 30-32.

The magistrate judge recommended that the motion to dismiss be

granted. *Id.* at 48-58. The magistrate judge first agreed with Shaw

that Silva's Eighth Amendment claim presented a new *Bivens* context.

*Id.* at 55-56. Turning then to whether the *Bivens* remedy should be

extended, the magistrate judge concluded that it should not. *Id.* at 56-

58. The magistrate judge cited three possible alternative remedies: the

Bureau of Prisons (BOP) Administrative Remedy Program, the Federal

Tort Claims Act (FTCA), and mandamus. *Id.* The magistrate judge

also found that extending the *Bivens* remedy to Silva's claim would

"interfer[e] with prison management and add to the Court's already

heavy burden of prisoner litigation." *Id.* at 58. And the magistrate

3

judge agreed that the lack of a damages remedy in the PLRA "cuts against the extension of a *Bivens* remedy." *Id.* Thus, the magistrate judge concluded that no *Bivens* remedy was available and recommended that the claim against Shaw in his individual capacity be dismissed. *Id.*

Shaw objected to the magistrate judge's recommendation. *Id.* at 62-65. He did not specifically challenge either prong of the magistrate judge's analysis. Instead, he restated his belief in the merits of the claim and explained why he believed he should have legal recourse. *Id.* He argued the BOP grievance process "has never worked" because his complaints had been denied. *Id.* at 63. And he cited three cases involving excessive force claims under 42 U.S.C. § 1983. *Id.* at 63-64. He did not cite any *Bivens* case. Nor did he address the magistrate judge's reasons for concluding *Bivens* should not be extended.

The district court adopted the recommendation and dismissed the complaint for failure to state a claim. *Id.* at 67-80. First, it found that Silva did not object to the magistrate judge's conclusion on the second step of the analysis: that the Court should not *extend Bivens* to cover Silva's claim because "potential alternative remedies and special factors exist that weigh against extending *Bivens*." *Id.* at 73; *see also id.* at 78

4

(again noting that Silva did not object to magistrate judge's "findings or conclusions with respect to step two of the *Ziglar* test").[4]  The district court therefore adopted that portion of the recommendation.  *Id.* at 73.

Second, the district court found that Silva had objected to the first prong of the magistrate judge's analysis: that Silva's excessive force claim presents a new *Bivens* context.  *Id.* at 74.  But it agreed with the magistrate judge's conclusion on that question.  It noted that Silva asserted a different constitutional right than any of the Supreme Court's three prior *Bivens* cases.  *Id.* at 77.  That difference, it determined, was sufficient to show that Silva's claim presented a new *Bivens* context.  *Id.*  The district court also agreed with the magistrate judge that "special factors in this case counsel against extending a

---

[4] Silva misunderstands this portion of the district court's order by suggesting it was drawing a distinction between individual capacity and official capacity claims.  Opening Br. at 5-6 n.5.  Although the court later mistakenly referred to the *Bivens* claim as an official capacity claim, that was not the distinction it was drawing.  Instead, it was differentiating between the first and second step of the *Bivens* analysis.  It found that Silva had not objected to the second step—that the *Bivens* remedy should not be extended (Aplt. App. at 73)—but had objected to the first step—that his claim presented a new *Bivens* context (*id.* at 74).

*Bivens* remedy"—specifically, the alternative remedies available under the BOP administrative remedy program and the FTCA.  *Id.* at 78.

### SUMMARY OF ARGUMENT

I.    Silva waived appellate review of the magistrate judge's conclusion that no *Bivens* remedy was available by failing to make specific objections to the recommendation.  Although Silva filed an objection, he did not argue that his claim fit within a previous *Bivens* case decided by the Supreme Court.  Nor did he dispute the magistrate judge's conclusion that special factors counseled against the *extension* of *Bivens*.  Instead, he simply restated the substance of his claim and argued generally that he should have legal recourse for that claim.  Such a general objection was insufficient to alert the district court to the substantive legal arguments that Silva asserts on appeal.

II.    The district court correctly concluded that Silva's excessive force claim presents a new *Bivens* context from cases previously decided by the Supreme Court.  The Supreme Court has never recognized a *Bivens* claim for excessive force.  The closest analogue is *Carlson v. Green*, 446 U.S. 14 (1980).  But *Carlson*—a deliberate indifference to medical needs case—involved a different kind of alleged misconduct, a

6

different legal standard, different elements and different institutional concerns than an excessive force claim. As the Supreme Court has recognized, an excessive force claim implicates matters of prison security in a way that a deliberate indifference claim does not. The mere fact that Silva's claim arises under the same constitutional provision as the claim in *Carlson* does not mean it is not a new context.

III.    The district court also correctly concluded that special factors counsel hesitation before extending *Bivens* to the excessive force context. First, prisoners like Silva have at least two alternative remedial processes for pursuing claims of excessive force: the BOP Administrative Remedy Program and the FTCA. Second, in addition to these alternative remedies, three other factors counsel against the extension of a *Bivens* remedy to this new context: (1) the potential impact on institutional security and resulting interference with executive functions; (2) the absence of any such remedy in the PLRA; and (3) the substantial financial and administrative burdens on the government that flow from the creation of a new damages remedy.

## STANDARD OF REVIEW

This Court reviews the dismissal of a complaint for failure to state a claim de novo, accepting all well-pleaded factual allegations—but not conclusory statements or legal conclusions—as true. *Iqbal*, 556 U.S. at 678; *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

As discussed below, however, Silva waived his arguments by failing to make specific objections to the magistrate judge's recommendation. He can avoid that waiver only by showing plain error. *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1122 (10th Cir. 2005).

## ARGUMENT

In *Bivens*, the Supreme Court recognized an implied damages remedy—not grounded in any statute—against federal officials who violate the Fourth Amendment's prohibition on unreasonable searches and seizures. 403 U.S. 388. In the decade that followed, the Supreme Court extended that remedy to two additional contexts: (1) a claim for gender discrimination in employment under the Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979); and (2) a claim for failure to provide adequate medical treatment under the Eighth Amendment, *Carlson*, 446 U.S. 14. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854-55 (2017).

But the Supreme Court has more recently explained that *Bivens* was the product of a different era—one in which the Court readily implied causes of action not found in any statutory text. *Id.* at 1855. That is no longer the case. Now, if Congress intends to create a private cause of action, it generally must do so explicitly. *Id.* at 1856. That doctrinal shift has led the Court to adopt a "far more cautious course before finding implied causes of action" than it once did. *Id.* at 1855.

Under this modern regime, "expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* at 1857. And for 40 years, the Supreme Court has refused to extend *Bivens* to *any* new context. *Id.* That is because an implied cause of action implicates "separation-of-powers principles" regarding "who should decide whether to provide for a damages remedy." *Id.* In most cases, it should be Congress. *Id.*

Thus, the viability of a *Bivens* claim turns on a two-step inquiry:

1.  Does the claim arise in a new context or involve a new category of defendants from previous *Bivens* cases decided by the Supreme Court?

2.  If so, are there any "special factors that counsel hesitation" before extending *Bivens* to that new context?

*Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020). If the answer is yes—that is, if there is "reason to pause"—no *Bivens* claim is available. *Id.*

I. **Silva waived the arguments he makes on appeal by failing to make those specific objections below—particularly as to the second prong of the *Bivens* framework.**

As a threshold matter, Silva failed to preserve his arguments for appellate review by failing to make those specific objections to the magistrate judge's recommendation in the district court.

Under the firm waiver rule, "a party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez*, 418 F.3d at 1119. A general objection does not count. *United States v. 2121 E. 30th Street*, 73 F.3d 1057, 1058 (10th Cir. 1996). Rather, to preserve an issue for appellate review, an objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* at 1060; *see also Thompson v. Sirmons*, 336 F. App'x 834, 836 (10th Cir. 2009) (unpublished) ("When a plaintiff does not make specific objections to the magistrate judge's report, he is considered to have waived those objections."). This analysis is issue-specific: a party who objects below on one ground cannot add another ground on appeal. *Richards v. Colvin*, 640 F. App'x 786, 792 (10th Cir. 2016) (unpublished).

10

Here, as the district court found, Silva did not object to the magistrate judge's conclusions on the second prong of the *Bivens* framework—that special factors, including alternative remedies, counseled against extending *Bivens* to Silva's excessive force claim. Aplt. App. at 73, 78.  Even construing Silva's objection liberally, it did not engage with that portion of the magistrate judge's analysis.  *See Apodaca v. Corizon Health Care*, 752 F. App'x 551, 552-54 (10th Cir. 2018) (unpublished) (applying firm waiver rule where objections "did not specifically address any of the magistrate judge's conclusions").

The closest Silva came was his general assertion that "the institution grievance process has never worked since guards will not discipline other guards." Aplt. App. at 63.  But such a conclusory and non-specific claim buried in a single sentence of a four-page brief is insufficient to preserve the issue for appeal.  *See Macklin v. Dowling*, 822 F. App'x 720, 724 (10th Cir. 2020) (unpublished) (holding that "skeletal discussion" was "not specific enough to alert the district court" to particular objection); *Smith v. Colvin*, 625 F. App'x 896, 901 (10th Cir. 2015) (unpublished) (holding single sentence insufficient to preserve issue); *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir.

11

2007) (unpublished) (holding "conclusory and non-specific" objection insufficient to avoid waiver).  Thus, at a minimum, Silva has waived any argument that *Bivens* should be extended to a new context.

He has also waived his argument that this case does not present a new *Bivens* context (the first *Bivens* step).  Again, Silva did not specifically object to the magistrate judge's conclusion on this point— notwithstanding the district court's liberal construction that he had. He did not argue, as he does on appeal, that his claim fit within the contours of the *Bivens* claim recognized in *Carlson*.  (Indeed, he did not cite *Carlson* at all.)  Nor did he argue that the Supreme Court has recognized a *Bivens* claim in any context *other* than the three it identified in *Abbasi*.  And he did not assert, as he insinuates on appeal, that *Farmer v. Brennan*, 511 U.S. 825 (1994), somehow broadened the scope of a *Carlson*-based claim.  (Again, he did not cite *Farmer* at all.)

Instead, he simply cited three cases (one from the Supreme Court and two from courts of appeals) recognizing claims for excessive force *under 42 U.S.C. § 1983*.  But § 1983 provides an *express* statutory cause of action for constitutional violations by state officers.  Silva's reference to that express cause of action, therefore, did not preserve the argument

12

that the Supreme Court has recognized an *implied* cause of action for excessive force against federal officers.  *See Laubach v. Scibana*, 301 F. App'x 832, 835 (10th Cir. 2008) (unpublished) (holding that objection was insufficient to preserve appellate review where reference to specific legal issues "was vague and bore no relevance" to recommendation).

It is true that Silva filed his objection pro se, and so it should be liberally construed.  *E.g.*, *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007).  But there is no pro se escape hatch from the firm waiver rule.  *Morales-Fernandez*, 418 F.3d at 1119-20.  And no matter how liberally Silva's objection is construed, it did not alert the district court to his newly framed argument that his claim is a *Carlson* claim— much less to his contention that the *Bivens* remedy should be *extended*.

There are two exceptions to the firm waiver rule, *Morales- Fernandez*, 418 F.3d at 1119, but neither applies here.  Those two exceptions are: (1) when a pro se litigant has not been informed of the time period for objecting and the consequences of failing to object; and (2) when the "interests of justice" require.  *Id.*  The first exception clearly does not apply, as the magistrate judge expressly advised Silva of the objection requirement in the written recommendation.  Aplt. App.

13

at 61 n.3.  To satisfy the second exception, Silva would have to show

plain error.  *Morales-Fernandez*, 418 F.3d at 1122.  For all the reasons

below, Silva cannot meet that standard.  Whatever arguments he

musters on appeal in favor of recognizing a new *Bivens* claim for

excessive force, that conclusion certainly is not plain under existing law.

## II.    The district court correctly concluded that Silva's excessive force claim presents a new *Bivens* context.

A claim presents a new *Bivens* context if it is "different in a

meaningful way from previous *Bivens* cases decided by [the Supreme]

Court."  *Abbasi*, 137 S.Ct. at 1859.  There are only three such cases:

(1) *Bivens*, a claim for unlawful search and seizure in violation of the

Fourth Amendment; (2) *Davis*, a claim by a congressional staffer for

gender discrimination in employment in violation of the Due Process

Clause; and (3) *Carlson*, a claim by a prisoner for failure to provide

adequate medical treatment in violation of the Eighth Amendment.

*Hernandez*, 140 S.Ct. at 741; *Abbasi*, 137 S.Ct. at 1854-55.  Thus, if a

*Bivens* claim differs in any meaningful way from the claims in those

three cases, then the context is new.  *Abbasi*, 137 S.Ct. at 1859, 1860.

In determining whether a claim presents a new context, the

question is not simply whether it is based on the same constitutional

provision as one of the three Supreme Court *Bivens* cases. *Hernandez*, 140 S.Ct. at 743; *Abbasi*, 137 S.Ct. at 1859 (rejecting approach that "asked whether the asserted constitutional right was at issue in a previous *Bivens* case"). Rather, any number of differences might be "meaningful enough to make a given context a new one," including:

- The rank of the officers involved;

- The constitutional right at issue;

- The generality or specificity of the official action;

- The extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted;

- The statutory or other legal mandate under which the officer was operating;

- The risk of disruptive intrusion by the judiciary into the functioning of other branches; or

- The presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S.Ct. at 1859-60. The "understanding of a 'new context' is broad." *Hernandez*, 140 S.Ct. at 743. "[E]ven a modest extension [of the *Bivens* remedy] is still an extension." *Abbasi*, 137 S.Ct. at 1864.

The Supreme Court has never recognized a *Bivens* claim for excessive force. So Silva attempts to liken his claim to the deliberate

15

indifference claim recognized in *Carlson*.  But other than the constitutional provision at issue, Silva's excessive force claim "bear[s] little resemblance" to the *Carlson* claim.  *Abbasi*, 137 S.Ct. at 1860.

The most obvious difference between the two claims is the nature of the alleged misconduct.  While *Carlson* was about the *in*action of prison officials in providing medical treatment, Silva's claim concerns the alleged *actions* of a correctional officer in using force against a prisoner.  That difference is critical because the Eighth Amendment must be applied "with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged."  *Whitley v. Albers*, 475 U.S. 312, 320 (1986).  In particular, the Supreme Court has specifically noted—albeit not for purposes of *Bivens*—that allegations of deliberate indifference present a materially different context than those of excessive force.  *Id.*  Thus, the difference in conduct between this case and *Carlson* is sufficiently meaningful to present a new *Bivens* context.

The two claims also involve different legal standards.  A deliberate indifference claim like the one in *Carlson* requires that the prison official "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  But application of that standard is

"inappropriate" when, as here, "officials stand accused of using excessive physical force." *Id.* at 835. Instead, an excessive force claim requires more—that the prison official act "maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21.

The reason for this different standard highlights the meaningfully different context of such a claim. Because a prison's responsibility to attend to prisoners' medical needs "does not ordinarily clash with other equally important government responsibilities," a claim for inadequate medical treatment does not typically involve "balancing competing institutional concerns for the safety of prison staff or other inmates." *Id.* at 320. Those concerns, however, are at the core of an excessive force claim. *Id.* Thus, courts should be more hesitant to "critique in hindsight" prison officials' decisions regarding use of force. *Id.* Framed in the language of *Abbasi*, such claims present a far greater "risk of disruptive intrusion by the Judiciary into the functioning" of the executive branch and face more limited "judicial guidance as to how an officer should respond" to a given situation.[5] *Abbasi*, 137 S.Ct. at 1860.

---

[5] Silva asserts that an excessive force claim "involves a lesser incursion into prison management than *Carlson*." Opening Br. at 13.

In short, "[t]here is a world of difference" between a claim that prison officials failed to appropriately treat a prisoner's asthma and a claim that an officer assaulted a prisoner in his cell. *Hernandez*, 140 S. Ct. at 744. Silva's claim therefore presents a new *Bivens* context. *Abbasi*, 137 S.Ct. at 1859; *see also, e.g.*, *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1170 (E.D. Cal. 2018) ("[D]eliberate indifference to a serious medical need . . . is different than Plaintiff's claims arising out of assault by officers."); *Brown v. Nash*, 2019 WL 7562785, at *5 (S.D. Miss. Dec. 13, 2019) (unpublished) (holding that Eighth Amendment excessive force claims present a new *Bivens* context); *Taylor v. Lockett*, 2019 WL 764023, at 7 (M.D. Fla. Feb. 21, 2019) (unpublished) (same).

Silva nevertheless contends that his is a *Carlson* claim. In doing so, he frames the *Carlson* claim at its highest level of generality—as a claim against "rank-and-file federal prison officials for violating the Eighth Amendment." Opening Br. at 10. But that argument rests on the same "basic misunderstanding" that the Supreme Court rebuffed in *Hernandez* and *Abbasi*. *Hernandez*, 140 S.Ct. at 743. The question is

---

But the Supreme Court has held otherwise. *Whitley*, 475 U.S. at 320-21. At a minimum, the analysis for an excessive force claim is *different*.

not simply whether the claim is "based on the same constitutional provision" as a prior *Bivens* case.  *Id.*  Nor does the analysis turn solely on the rank of the officers.  Rather, the inquiry is a multi-faceted one that looks to *all* meaningful differences, of which the rank of the officers and the constitutional right at issue are only two possibilities.  *Abbasi*, 137 S.Ct. at 1859-60 (noting that listed examples are not exhaustive).

Indeed, *Abbasi* itself indicates that *Carlson* does not extend to claims of prisoner abuse.  In *Abbasi*, the plaintiff asserted a claim of prisoner abuse under the Fifth Amendment.  *Id.* at 1864.  Although the claim had "significant parallels" to *Carlson* in that both alleged prisoner mistreatment, "the new-context inquiry [was] easily satisfied"—even though the *Abbasi* claim was premised on a theory of deliberate indifference.  *Id.* at 1864-65.  The Court's reasoning applies with at least as great force here, where Silva's claim is *not* a deliberate indifference one.  Like *Abbasi*, Silva's claim involves a different constitutional right (albeit one arising under the same constitutional provision), a different legal standard, and several features *Carlson* did not consider, including the intervening enactment of the PLRA.  *Id.*

19

*Farmer* does not help Silva either.  First, *Farmer* did not decide (or address) whether a *Bivens* remedy was available; it was solely about the standard for deliberate indifference.  511 U.S. at 835-47.  It is therefore not one of the three *Bivens* claims the Supreme Court has recognized.  *Abbasi*, 137 S.Ct. at 1855 ("*Bivens*, *Davis*, and *Carlson* represent the only instances in which the Court has approved of" a *Bivens* remedy.); *see also Cooper Indus., inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court not ruled upon, are not to be considered as having been so decided as to constitute precedents.").  Second, Silva's claim is meaningfully different from the claim in *Farmer* for the same reasons: an affirmative use of force is an entirely different animal than a deliberate failure to act.  *Whitley*, 475 U.S. at 320-22.

Finally, Silva cites a handful of unpublished cases in which this Court has decided cases involving *Bivens* excessive force claims.  As an initial matter, *Ali v. Duboise*—the first case Silva cites, and the only one post-*Abbasi*—was not a *Bivens* case at all, but a case involving 42 U.S.C. § 1983 claims against *state* officials.  763 F. App'x 645, 647 (10th Cir. 2019) (unpublished) (noting that claims were against Tulsa County

Jail officials); *Ali v. Duboise*, 2017 WL 5930292, at *3 n.2 (N.D. Okla. Nov. 30, 2017) (unpublished) (explaining that although the plaintiff asserted claims under *Bivens*, the action was properly construed as one under § 1983 because defendants were acting under color of state law).

Of the other three Tenth Circuit cases Silva cites, none addressed whether a *Bivens* claim was available. Instead, they simply considered whether the plaintiff's claim satisfied the substantive legal standard for an excessive force claim (and two of the three rejected the claim). *See Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 376 (10th Cir. 2010) (unpublished) (holding that plaintiff's allegations "do not establish an excessive force claim"); *Kelly v. Scott*, 1999 WL 1101815, at *3 (10th Cir. Dec. 3, 1999) (unpublished) (same); *Leggett v. Clark*, 1994 WL 589445, at *4 (10th Cir. Oct. 28, 1994) (unpublished) (remanding for further evaluation of facts). The same is true of all but one of the excessive force cases Silva cites from other circuits.[6] Opening Br. at 15.

---

[6] The sole exception is *Reid v. United States*, an unpublished case in which the Ninth Circuit held—with little analysis—that the plaintiff's excessive force claims did not present a new *Bivens* context. 825 F. App'x 442, 444-45 (9th Cir. 2020). But *Reid* did not address the distinction between the deliberate indifference claim in *Carlson* and an excessive force claim. Instead, it simply lumped all Eighth Amendment

But more importantly, even if this Court (or another court of appeals) had recognized a *Bivens* remedy for excessive force pre-*Abbasi*, that is not the question. After *Abbasi*, the question is whether the claim has been recognized by the *Supreme Court*. *Abbasi*, 137 S.Ct. at 1859 (stating the proper test as whether the case is "different in a meaningful way from previous *Bivens* cases decided *by this Court*") (emphasis added). And whatever this Court has done in the past, the *Supreme Court* has never recognized a *Bivens* claim for excessive force.

## III. The district court correctly concluded that special factors counsel against extending *Bivens* to this new context.

When a purported *Bivens* claim arises in a new context, as Silva's claim does here, the Court must ask "whether there are special factors that counsel hesitation about granting the extension." *Hernandez*, 140 S.Ct. at 743. It is a "significant step under separation-of-powers principles for a court to determine it has the authority . . . to create and enforce" a constitutional cause of action for damages that Congress has not authorized. *Abbasi*, 137 S.Ct. at 1856. So the Supreme Court has

---

claims together under the umbrella of "conditions of confinement." *Id.* Thus, *Reid* was wrongly decided for the reasons discussed above.

"urged caution" before extending the *Bivens* remedy to any new context. *Id.* at 1857; *see also Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (noting presumption against creation of new *Bivens* remedies). If any feature of a case causes a court to pause before recognizing a new *Bivens* remedy—and "[i]t does not take much," *Farah*, 926 F.3d at 500— the court "must refrain" from doing so. *Abbasi*, 137 S.Ct. at 1858.

The central question in the "special factors" inquiry is not *whether* there should be a remedy for the alleged constitutional violation, but *who* should decide: Congress or the courts? *Id.* at 1857. That question "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58.

If there is an alternative remedial structure in place to address the alleged harm, "that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858. But an alternative remedy is far from the only "special factor," and it is not required. *Hernandez*, 140 S.Ct. at 750 & n.12 (noting that absence of alternative remedy does not require extension of *Bivens*). Rather, a "special factor" may be anything that causes a court to hesitate before determining that

it—not Congress—is best positioned to create a new damages remedy. *Abbasi*, 137 S.Ct. at 1858. Though there is no "exhaustive list" of such factors, they may include the risk of interfering with executive functions, the impact on governmental operations, the burdens on government employees and the government, or Congressional silence. *Hernandez*, 140 S.Ct. at 746-50; *Abbasi*, 137 S.Ct. at 1858, 1861-62.

## A. Silva had alternative remedies for the alleged harm through the BOP grievance process and the FTCA.

The district court correctly found that Silva had at least two existing alternative remedies for the alleged harm. Aplt. App. at 78-79. Those alternative remedies alone preclude the creation of a new *Bivens* remedy. *Abbasi*, 137 S.Ct. at 1858 ("[I]f Congress has created any alternative, existing process for protecting the injured party's interest[,] that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.").

First, Silva could have filed a grievance through the BOP Administrative Remedy Program. That program allows inmates "to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The Supreme Court has identified the BOP program as exactly the kind of alternative remedial structure

that precludes extension of the *Bivens* remedy. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). So have other courts. *See, e.g.*, *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020); *Hunt*, 336 F.Supp.3d at 1169; *Taylor*, 2019 WL 764023, at *7.

Silva suggests that the BOP administrative program does not count as an alternative remedial structure because it was created by regulation rather than by statute. But the Supreme Court has rejected that distinction. *Malesko*, 534 U.S. at 74 (citing "remedial mechanisms established by the BOP," including administrative remedy program, as alternative remedial structure); *Wilkie v. Robbins*, 551 U.S. 537, 552-54 (2007) (citing administrative review as alternative remedy).

*McCarthy v. Madigan*, 503 U.S. 140 (1992), does not hold otherwise. In that case, the plaintiff asserted a *Carlson* claim and the question was whether the administrative exhaustion requirement could "displace" that claim. *Id.* at 151-52. Here, there is no existing *Bivens* remedy for Congress to displace. To the extent *McCarthy* could be read to suggest that only alternative statutory remedies matter, it is inconsistent with the modern presumption against extending the *Bivens*

remedy. *See Hernandez*, 140 S.Ct. at 750 ("Congress's decision not to provide a judicial remedy does not compel us to step into its shoes.").

Silva also asserts that the administrative remedy program should not preclude a *Bivens* remedy because it is not "equally effective" in redressing his injury or deterring future misconduct. Opening Br. at 23. But the alternative remedy "need not be perfectly congruent" with the proposed *Bivens* remedy. *Minneci v. Pollard*, 565 U.S. 118, 129 (2012). And administrative remedies may be adequate even where they do not provide complete relief. *Id.* In the case of the BOP grievance process, it is enough that it provides a "means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." *Malesko*, 534 U.S. at 74.

As for Silva's contention that the administrative process is not available to him because his past grievances have been denied, no law entitles Silva to any particular outcome. If anything, the fact that the BOP has reviewed Silva's grievances and deemed them to be unfounded counsels against the judiciary's insertion of itself in that process. *Cf. Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (holding that claim is not

cognizable if it would necessarily imply the invalidity of prison disciplinary proceedings that resulted in loss of good time credits).

The second alternative remedy available to Silva is a claim under the Federal Tort Claims Act. The FTCA permits damages claims against the United States for any injury caused by the wrongful act or omission of a government employee. 28 U.S.C. § 1346(b)(1). In particular, the FTCA permits claims for assault and battery committed by law enforcement officers (which include correctional officers). 28 U.S.C. § 2680(h); *Milbrook v. United States*, 569 U.S. 50, 55-56 (2013). Thus, although Silva could not have brought his *constitutional* claims under the FTCA, he could have brought those same claims under a state law tort theory. The availability of a direct action against the government weighs against an implied *Bivens* remedy. *FDIC v. Meyer*, 510 U.S. 471, 485 (1994); *see also Turkmen v. Ashcroft*, 2018 WL 4026734, at *9-11 (E.D.N.Y. Aug. 13, 2018) (unpublished) (holding that FTCA provided alternative remedy for claims of prisoner abuse).

Silva acknowledges that he could have brought his claims under the FTCA, but he cites *Carlson* for the proposition that the FTCA is a parallel remedy, not an alternative one. The problem for Silva is that

27

*Carlson* is part of the "ancien regime" in which an alternative remedy could preclude a *Bivens* remedy only when Congress "explicitly declared [it] to be a *substitute* for recovery directly under the Constitution and viewed [it] as equally effective." *Carlson*, 446 U.S. at 18-19; *Abbasi*, 137 S.Ct. at 1855. *Abbasi* now makes clear that "*any* alternative, existing process for protecting the injured party's interest" will defeat a new *Bivens* claim. 137 S.Ct. at 1858 (emphasis added); *see also Turkmen*, 2018 WL 4026734, at *10 (citing cases questioning "continued vitality of *Carlson's* holding that FTCA and *Bivens* claims may proceed" in parallel).[7] The FTCA is indisputably *an* "alternative, existing process."

### B. Other special factors counsel hesitation in extending *Bivens* to the prison excessive force context.

In addition to the alternative remedial structures, there are several other factors that should cause the Court to hesitate before implying a new *Bivens* remedy for excessive force in the prison context.

---

[7] Indeed, the dissent in *Abbasi* relied on the same excerpt from *Carlson* that Silva does, in arguing that a *Bivens* remedy should have been implied in that case. *Abbasi*, 137 S.Ct. at 1881 (Breyer, J., dissenting). Suffice to say, the majority did not agree.

First, the potential impact on institutional security.  As the Supreme Court has noted, "[i]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike." *Whitley*, 475 U.S. at 320.  Thus, when a conflict arises, "the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight." *Id.* at 321 (quotations and citations omitted).  Subjecting prison officials to individual liability could interfere with prison security by causing officials to "refrain from taking urgent and lawful action" necessary to ensure the safety of the prison. *Abbasi*, 137 S.Ct. at 1863.

That is not to say that an unprovoked assault "in violation of prison security protocols" is necessary to ensure prison security. Opening Br. at 17.  But that is not the question. *Hernandez*, 140 S.Ct. at 746.  Nor is the question whether the alleged conduct was proper. *Abbasi*, 137 S.Ct. at 1869.  Rather, the question is whether *this Court* should alter the existing framework for addressing claims that unlawful force was used. *Hernandez*, 140 S.Ct. at 746.  It should not.  Given the

high stakes on both sides of the equation—prison security, on one hand, and protection of constitutional rights, on the other—"[t]he proper balance is one for the Congress, not the Judiciary, to undertake." *Abbasi*, 137 S.Ct. at 1863; *see also Taylor*, 2019 WL 764023, at \*6 ("Congress is better suited than the judiciary to balance the challenges prison administrators face in maintaining prison security against the expansion of the private right of action for damages.") (quotation omitted). For this Court to do so would "risk a disruptive intrusion" into the functions of the executive branch. *Abbasi*, 137 S.Ct. at 1860.

The second factor weighing against the creation of a new *Bivens* remedy is the lack of any such remedy in the Prison Litigation Reform Act. In rejecting the Fifth Amendment prisoner abuse claim in *Abbasi*, the Supreme Court explained that, in enacting the PLRA, "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." 137 S.Ct. at 1865. Congress's failure to provide for a "standalone damages remedy" therefore suggests "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment. *Id.*; *see*

*also Taylor*, 2019 WL 764023, at *8 ("Congress has been active in the area of prisoners' rights and has not created a damages remedy.").

Silva points to the procedural limitations in the PLRA as evidence that Congress did not intend "to eliminate *Bivens* suits altogether." Opening Br. at 26. But the Appellee is not arguing that *Bivens* suits must be eliminated altogether. The three claims previously recognized by the Supreme Court endure. But certainly, a statutory *limitation* on those existing claims does not show a Congressional intent to *expand* the remedy to other contexts—as confirmed by the Supreme Court's persistent refusal to expand *Bivens* after the passage of the PLRA.

Congress knows how to create a damages remedy against government officials for violating constitutional rights, and it has done so for *state* officials. 42 U.S.C. § 1983. That it has not created an analogous remedy against *federal* officials—for 100 years before *Bivens* and 50 years since—makes it "much more difficult to believe that congressional inaction was inadvertent." *Abbasi*, 137 S.Ct. at 1862.

Third, expansion of the *Bivens* remedy to an entirely new category of cases would impose substantial burdens upon both the government employees who are individually sued and the government itself. *Id.* at

31

1856, 1858.  Those burdens include not only financial costs, but also "the time and administrative costs attendant upon intrusions resulting from the discovery and trial process." *Id.* at 1856.  It would also add to the courts' already heavy burden of prisoner litigation that the PLRA was designed to alleviate. *See Whitington v. Ortiz*, 472 F.3d 804, 807 (10th Cir. 2007) (noting that purpose of PLRA exhaustion requirement is "to reduce the quantity and improve the quality of prisoner suits").

It may be, as Silva argues, that the deterrent benefits of such a remedy exceed the costs.  Or it may be that the BOP grievance process and the FTCA are deterrent enough.  But what is clear is that there is an assessment to be made. *Abbasi*, 137 S.Ct. at 1858.  And it is not generally a judicial function to perform that assessment.  If Congress believes "a damages remedy [is] necessary to redress past harm and deter future violations," Congress is best suited to create one. *Id.*; *see also id.* at 1863 (emphasizing that "proper balance" between deterring constitutional violations and freeing officials to take "urgent and lawful action" is "one for the Congress, not the Judiciary to undertake").

Silva asserts that any impact on government operations would be mitigated by various procedural requirements and the heightened

burden of qualified immunity.  But that too is an assessment for Congress to make.  The safeguards that Silva cites—none of which prevent lawsuits from being *filed*—apply in any prisoner lawsuit.  Yet, despite those safeguards, expansion of the *Bivens* remedy remains a disfavored judicial activity.  *Abbasi*, 137 S.Ct. at 1857.  And that is because the problem is not just the proliferation of frivolous claims, but the separation of powers concerns implicated by a court's creation of a damages remedy (even for a substantively meritorious claim) when Congress has not done so.  *Id.* at 1856; *Hernandez*, 140 S.Ct. at 750 (noting that not every constitutional violation requires a damages remedy).  This Court may not imply a remedy that Congress did not intend simply because other procedural limitations might provide some protection against a "flood of frivolous lawsuits."  Opening Br. at 17.

Finally, Silva cites the Westfall Act—which exempted *Bivens* claims from the FTCA's bar on damages claims against federal employees—in support of his proposed expansion of the *Bivens* remedy. 28 U.S.C. § 2679(b)(2)(A).  But this provision "simply left *Bivens* where it found it.  It is not a license to create a new *Bivens* remedy in a context [the Supreme Court] has never before addressed."  *Hernandez*, 140 S.Ct.

at 748 n.9.  Indeed, in *Abbasi*, the Supreme Court cited that provision as a reason for caution in recognizing a new *Bivens* remedy.  137 S.Ct. at 1856.  If anything, the provision confirms that Congress had *Bivens* on its mind and chose *not* to expand that remedy when it had the opportunity.  *Id.* at 1862.  As in *Abbasi*, "that silence is telling."  *Id.*; *see also Turkmen*, 2018 WL 4026734, at *7 (noting that *Abbasi* majority rejected argument that Westfall Act supports extending *Bivens*).

## CONCLUSION

The order dismissing Silva's complaint for failure to state a claim should be affirmed.

DATED:  October 25, 2021

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney


/s/ KARL L. SCHOCK
KARL L. SCHOCK
Assistant United States Attorney

34

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 7,042 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

DATED:  October 25, 2021          /s/ KARL L. SCHOCK
                                 KARL L. SCHOCK
                                 Assistant United States Attorney

35

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, I electronically filed the foregoing **APPELLEES' ANSWER BRIEF** with the Clerk of the court for the United States Court of Appeals for the Tenth Circuit, using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

s/ *Kayla Keiter*
KAYLA KEITER
U.S. Attorney's Office